1   XAVIER BECERRA
    Attorney General of California
2   TRACY L. WINSOR (SBN 186164)
    Supervising Deputy Attorney General
3   COLLEEN R. FLANNERY (SBN 297957)
    DANIEL M. FUCHS (SBN 179033)
4   ADAM LEVITAN (SBN 280226)
    JEFFREY P. REUSCH (SBN 210080)
5   L. ELIZABETH SARINE (SBN 285631)
    SARA D. VAN LOH (SBN 264704)
6   Deputy Attorneys General
      1300 I Street, Suite 125
7     P.O. Box 944255
      Sacramento, CA 94244-2550
8     Telephone: (916) 210-7827
      Fax: (916) 327-2319
9     Email: Daniel.Fuchs@doj.ca.gov
    *Attorneys for Plaintiffs California Natural*
10  *Resources Agency, California Environmental*
    *Protection Agency, and People of the State of*
11  *California by and through Xavier Becerra, Attorney*
    *General of the State of California*

12

13                    IN THE UNITED STATES DISTRICT COURT

14                   FOR THE EASTERN DISTRICT OF CALIFORNIA

15

16

17   **THE CALIFORNIA NATURAL**          1:20-cv-00426-DAD-EPG
     **RESOURCES AGENCY ET AL.,**
18                                        **PLAINTIFFS' MEMORANDUM OF**
                                          **POINTS AND AUTHORITIES IN**
19                          Plaintiffs,   **SUPPORT OF MOTION TO COMPLETE**
                                          **AND SUPPLEMENT THE**
20        v.                              **ADMINISTRATIVE RECORDS**

21   **WILBUR ROSS, ET AL.,**             Date:        March 2, 2021
                                          Time:
22                          Defendants.   Dept:        5
                                          Judge:       The Honorable Dale A. Drozd
23                                        Trial Date:  TBD
                                          Action Filed: February 20, 2020

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Introduction ........................................................................................................... 1

Factual Background ............................................................................................... 2

    I.     Political Pressure Pre-Determined the Outcome of the ESA Consultation
           Process ................................................................................................... 2

         A.    Political Pressure Came from the Highest Levels ...................................... 2

         B.    Political Pressure Resulted in Inadequate Time for a Proper
              Consultation Process ........................................................................ 3

         C.    Political Pressure Resulted in a Flawed Consultation Process ................... 4

         D.    NMFS Scientists' Final Biological Opinion, Submitted by the
              Deadline of July 1, 2019, Was Rejected, and the Team Was
              Replaced ......................................................................................... 5

    II.    Political Pressure Compelled Reclamation to Violate the 2009 Biological
           Opinion's Required Mitigation Measures .................................................. 6

Standard of Review ............................................................................................... 6

    I.     Federal Defendants Must Include All Relevant Documents in their Records ........ 7

    II.    Plaintiffs Can Overcome the Presumption of Regularity in Defendants'
           Records ................................................................................................. 7

Argument .............................................................................................................. 8

    I.     The Administrative Records Are Incomplete .............................................. 9

         A.    The NMFS Record Omits Documents Demonstrating Procedural
              Irregularities and Improper Political Influence in the Consultation
              Process ........................................................................................... 9

         B.    The NMFS Record Does Not Include Routine Communications ............. 10

         C.    The Records Do Not Include All Communications with California
              Agencies ....................................................................................... 10

    II.    The Omitted Documents Should Not Be Excluded from the Records Either
           Under the Deliberative Process Privilege or Because They Are
           "Deliberative" But Not Privileged ........................................................ 11

         A.    The Court Should Reject Federal Defendants' Assertion of the
              Deliberative Process Privilege .................................................... 11

              1.    The deliberative process privilege does not apply to certain
                  documents ...................................................................... 12

              2.    Any applicable privilege has been waived by publication ............ 13

              3.    The need for these documents outweighs any qualified
                   privilege ....................................................................... 14

         B.    The Court Should Reject Federal Defendants' Flawed
              "Deliberative" Exclusion Claim .................................................. 15

    III.    The Court Should Consider Certain Extra-Record Evidence .............................. 16

i

# TABLE OF CONTENTS
(continued)

|  |  |  | Page |
|---|---|---|---|
| | A. | The Court Should Add Documents showing that Reclamation prematurely stopped complying with the 2009 biological opinion | 16 |
| | B. | The Court Should Add Environmental Documents Prepared for the Shasta Dam Raise Project | 17 |
| IV. | | The Certifications Demonstrate That the USFWS and NMFS Records Were Not Properly Compiled | 17 |
| | A. | The USFWS Certification Is Improperly Limited | 18 |
| | B. | The NMFS Certification Suggests Arbitrariness in the Record Compilation | 19 |
| V. | | Federal Defendants Should Provide a Privilege Log | 21 |
| Conclusion | | | 22 |

ii

California's Mem. P. & A. ISO Mot. to Complete and Supp. Admin. Records (1:20-cv-00426)

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ...........................................................................................18

*Assembly of State of Cal. v. U.S. Dep't of Commerce*
  968 F.2d 916 (9th Cir. 1992) .........................................................................11, 21

*Bay.org v. Zinke*
  No. 1:17-CV-01176-LJO-EPG, 2018 WL 3965367 (E.D. Cal. Aug. 16, 2018)..................8, 16

*Cape Hatteras Access Pres. All. v. U.S. Dep't of Interior*
  667 F. Supp. 2d 111 (D.D.C. 2009) ......................................................................8

*Carter v. U.S. Dep't of Commerce*
  307 F.3d 1084 (9th Cir. 2002)............................................................................11

*Coal. for a Sustainable Delta v. Koch*
  No. 108-CV-00397-OWW-GSA, 2009 WL 3378974 (E.D. Cal. Oct. 15, 2009) ...................15

*Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*
  No. C-06-4884-SI, 2007 WL 3049869 (N.D. Cal. Oct. 18, 2007)..............................7

*F.T.C. v. Warner Comms., Inc.*
  742 F.2d 1156 (9th Cir. 1984)....................................................................11, 14, 15

*Fort Sill Apache Tribe v. Nat'l Indian Gaming Comm'n*
  345 F. Supp. 3d 1 (D.D.C. 2018) ........................................................................18

*Gill v. Dep't of Justice*
  No. 14-CV-03120-RS (KAW), 2015 WL 9258075 (N.D. Cal. Dec. 18, 2015)..................19, 20

*Golden Gate Salmon Ass'n v. Ross*
  No. 1:17-CV-01172-LJO-EPG, 2018 WL 3129849 (E.D. Cal. June 22, 2018) ..............7, 8, 15

*In re McKesson Governmental Entities Average Wholesale Price Litig.*
  264 F.R.D. 595 (N.D. Cal. 2009) ........................................................................13

*In re Sealed Case*
  121 F.3d 729 (D.C. Cir. 1997) ...........................................................................12

*In re Sealed Case*
  856 F.2d 268 (D.C. Cir. 1988) ...........................................................................21

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Subpoena Served Upon Comptroller of Currency, & Sec'y of Bd. of Governors of Fed. Reserve Sys.*
   967 F.2d 630 (D.C. Cir. 1992) ......................................................................... 12

*Karnoski v. Trump*
   926 F.3d 1180 (9th Cir. 2019) ........................................................................ 15

*L.H. v. Schwarzenegger*
   No. S-06-2042 2007 WL 2009807, at *2 (E.D. Cal. July 6, 2007) ........................ 21

*Lands Council v. Powell*
   395 F.3d 1019 (9th Cir. 2005) ........................................................................ 16

*Maricopa Audubon Soc. v. U.S. Forest Serv.*
   108 F.3d 1089 (9th Cir. 1997) ........................................................................ 11

*McCrary v. Gutierrez*
   495 F. Supp. 2d 1038 (N. D. Cal. 2007) ........................................................ 7, 15

*Modesto Irrigation Dist. v. Gutierrez*
   No. 1:06-CV-00453-OWW-DLB, 2007 WL 763370 (E.D. Cal. Mar. 9, 2007) ...... 14

*Modesto Irrigation District v. Gutierrez*
   2007 WL 669718 (E.D. Cal.) .......................................................................... 22

*Nat'l Ass'n of Chain Drug Stores v. U.S. Dep't of Health & Human Servs.*
   631 F. Supp. 2d 23 (D.D.C. 2009) ................................................................. 15

*Nat'l Wildlife Fed'n v. United States Forest Serv.*
   861 F.2d 1114 (9th Cir. 1988) ........................................................................ 11

*Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs*
   448 F. Supp. 2d 1 (D.D.C. 2006) ...................................................................... 7

*Pinnacle Armor, Inc.*, 923 F. Supp. 2d 1226, 1232 (E.D. Cal. 2013) ...................... 7

*Portland Audubon Soc'y v. Endangered Species Comm.*
   984 F.2d 1534 (9th Cir. 1993) ....................................................................... 7, 8

*S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*
   No. CIV S-06-2845 2008 WL 3932358, at *4 (E.D. Cal. Aug. 26, 2008) ................. 9

*San Francisco Baykeeper v. U. S. Envtl. Prot. Agency*
   No. C 19-05941 WHA, ___ F. Supp. 3d ___ (N.D. Cal. Oct. 5, 2020) .................. 13

iv

# TABLE OF AUTHORITIES
### (continued)

**Page**

*San Luis & Delta-Mendota Water Auth. v. Jewell*
No. 1:15-CV-01290-LJO-GSA, 2016 WL 3543203 (E.D. Cal. June 23, 2016)
(*Jewell*) ............................................................................................................18, 20, 21

*State of N.D. ex rel. Olson v. Andrus*
581 F.2d 177 (8th Cir. 1978) ................................................................................13

*Thompson v. U.S. Dept. of Labor*
885 F.2d 551 (9th Cir. 1989) ......................................................................7, 11, 18

*U.S. ex rel. Bagley v. TRW, Inc.*
204 F.R.D. 170 (C.D. Cal. 2001) .........................................................................13

*United States v. Rozet*
183 F.R.D. 662 (N.D. Cal. 1998) .........................................................................21

*WildEarth Guardians v. U.S. Forest Serv.*
713 F. Supp. 2d 1243 (D. Colo. 2010) ..................................................................8

*Winnemem Wintu Tribe v. U.S. Forest Serv.*
No. 2:09-CV-01072-KJM-KJ, 2014 WL 3689699 (E.D. Cal. July 24, 2014) ............8


STATUTES

5 United States Code
§ 552 (Freedom of Information Act).............................................................. *passim*
§ 706 .......................................................................................................................6

16 United States Code
§ 1536(a)(2) ............................................................................................................2

42 United States Code
§§ 4321 et seq. (National Environmental Policy Act) ........................................1, 3

COURT RULES

Federal Rule of Civil Procedure 8(a) ....................................................................18

OTHER AUTHORITIES

166 Cong. Rec. E1067–E1068 (Nov. 24, 2020) (statement of Rep. Huffman) ................5

**INTRODUCTION**

On October 21, 2019, the United States Fish and Wildlife Service (USFWS) and the National Marine Fisheries Service (NMFS) (together, the Services) each issued biological opinions under section 7 of the Endangered Species Act (ESA). These opinions responded to an application by the United States Bureau of Reclamation (Reclamation) and the California Department of Water Resources (DWR) regarding the coordinated operation of the federal Central Valley Project and the State Water Project. On February 19, 2020, after concluding its environmental review process, Reclamation issued a Record of Decision adopting the 2019 biological opinions and began operating the Central Valley Project under those opinions.

This lawsuit by Plaintiffs California Natural Resources Agency, California Environmental Protection Agency, and People of the State of California by and through California Attorney General Xavier Becerra (collectively, California) followed. California's First Amended Complaint (Doc. No. 51) alleges, among other things, that the 2019 Biological Opinions violate the ESA in a variety of ways, and that Reclamation issued its Record of Decision in violation of the National Environmental Policy Act (NEPA).

On September 25, 2020, the two Services and Reclamation (together, Federal Defendants) certified and filed their administrative records in this case. (Doc. Nos. 143-1–143-6.) Documents within these records and other documents not in the records demonstrate that staff within the Federal Defendants were subjected to tremendous political pressure to increase water exports at the expense of the listed species.

Federal Defendants have inappropriately omitted documents from the record that demonstrate that this pressure contributed to deficient biological opinions. These include: (A) documents demonstrating procedural irregularities and improper political influence in the consultation process (including internal communications and documents related to a then-final NMFS biological opinion completed on July 1, 2019); and (B) certain communications with DWR. *See* Declaration of Daniel M. Fuchs (Fuchs Decl.), Exs. 5, 6. These documents should have been included in the records, and California therefore asks this Court to complete the records by ordering the documents included in them.

1

Because additional documents show that an undercurrent of political pressure skewed the consultation process, certain additional documents should supplement the record. These documents include: (A) documents showing that Reclamation prematurely stopped complying with the 2009 biological opinion, Fuchs Decl., Ex. 21; and (B) environmental documents prepared for the Shasta Dam raise proposal, including the 2015 USFWS impact analysis and the August 2020 draft Supplemental Environmental Impact Statement. Fuchs Decl., Exs 8, 9.

## FACTUAL BACKGROUND

Beginning in August 2017, in response to (among other things) precipitous declines in the abundance of Delta smelt and winter-run Chinook salmon since issuance of the operative Biological Opinions in 2008 and 2009, Reclamation and DWR sought reinitiation of consultation on the long-term operation of the Central Valley Project and State Water Project.

However, beginning in early 2018, political pressure altered the normal regulatory process, compelling Federal Defendants to reach a predetermined outcome contrary to the best available science. As laid out below, documents that are largely absent from the administrative records, which California now asks this Court to order Federal Defendants to add to the records, support a conclusion that the ESA consultation process, the resulting Biological Opinions, and the administrative records certified and filed on behalf of the Federal Defendants were all irregular. Among other things, these documents demonstrate that Federal Defendants did not, as they were required to, "use the best scientific and commercial data available." 16 U.S.C. § 1536(a)(2).

I.   **POLITICAL PRESSURE PRE-DETERMINED THE OUTCOME OF THE ESA CONSULTATION PROCESS**

A.   **Political Pressure Came from the Highest Levels**

On August 17, 2018, then-Interior Secretary Ryan Zinke circulated a memo regarding "California's Water Infrastructure," which emphasized "maximizing water supply deliveries" and required agencies to come up with plans to do so within 15 days. Fuchs Decl., Ex. 10, NMFS FOIA release 0.7.115.14791-000001. Following this effort, Interior asked NMFS, "What can NMFS do to expedite actions the [sic] increase the release of water to farmers/other water users in California?" Fuchs Decl., Ex. 11, NMFS FOIA Document No. 0.7.115.50795-000001. In October

2

1  2018, President Donald Trump signed a "Presidential Memorandum to Promote the Reliable

2  Supply and Delivery of Water in the West," directing Secretaries Zinke and Ross to "streamline

3  approvals for federal water infrastructure." Fuchs Decl., Ex. 69, October 18, 2020, Remarks by

4  President Trump at Signing of Presidential Memorandum to Promote the Reliable Supply and

5  Delivery of Water in the West. When he signed the Presidential Memorandum, the President

6  telegraphed his desired outcome of the ESA process, stating, "You'll have a lot of water. I hope

7  you'll enjoy the water you'll have." Fuchs Decl., Ex. 71, Bettina Boxall, "Salmon study may foil

8  Trump's plan to boost water deliveries to Central Valley farms," L.A. Times: Climate &

9  Environment (July 18, 2019, 3:00 AM) https://www.latimes.com/environment/story/2019-07-

10  18/endangered-salmon-threaten-trump-delta-plan. Nine months later, Reclamation released its

11  expedited Biological Assessment for the reinitiation of consultation, including the Proposed

12  Action (PA). Fuchs Decl., Ex. 65, Predecisional Review Draft July 30, 2019, Reclamation Record

13  at BOR0057893.

14      In February 2019, the President announced his intention to appoint a former lobbyist for

15  Intervenor-Defendant Westlands Water District, David Bernhardt, as Interior Secretary.

16  Bernhardt told the New York Times that soon after joining Interior at a lower level in 2017, he

17  directed David Murillo, Mid-Pacific Regional Director, to "begin the process of weakening

18  protections for the Delta smelt and winter-run Chinook salmon to free up river water for

19  agriculture." Fuchs Decl., Ex. 71, Coral Davenport, "Top Leader at Interior Dept. Pushes a Policy

20  Favoring His Former Client," N.Y. Times (Feb. 12, 2019),

21  https://www.nytimes.com/2019/02/12/climate/david-bernhardt-endangered-species.html.

**B.    Political Pressure Resulted in Inadequate Time for a Proper Consultation
Process**

The Presidential Memorandum imposed an expedited timeline for completion of the

Biological Opinions. A typical timeline for preparation of Biological Opinions and completion of

the NEPA process is roughly four years from Notice of Intent to Record of Decision. Fuchs Decl.,

Ex. 12, October 11, 2017 memo, NMFS FOIA Production No. 0.7.115.8591-000001. At the

outset of consultation, the participants expected that the earliest the process could be completed

3

1    was three to five years. Fuchs Decl., Ex. 67, Reclamation Record at BOR0747583. The project

2    management plan contemplated completion in 2022. Fuchs Decl., Exh. 64, Project Management

3    Plan for the Reinitiation of Consultation on the Coordinated Long-Term Operation of the Central

4    Valley Project and State Water Project is attached to this Declaration, Reclamation Record at

5    BOR0746151.

6         Before the release of the Presidential Memorandum, Katrina Harrison, Project Manager at

7    Reclamation's Bay-Delta Office, presented options regarding the schedule, noting that expediting

8    the then-current schedule for environmental review of the Proposed Action would result in

9    "increasing legal vulnerabilities if the Services do not have enough time to address all of the

10   comments." Fuchs Decl., Ex. 12, October 11, 2017, memo NMFS FOIA Production No.

11   0.7.115.8591-000001. Even so, NMFS was directed to expedite completion[1] of its biological

12   opinion, and was told that "dates are driven [by] Congress and Dc [sic] and are in flux . . . ."

13   Fuchs Decl., Ex. 13, August 9, 2018 Email from Maria Rea Re: 8/9/2018 updates on ROC on

14   LTO, NMFS FOIA Production No. 0.7.115.8894.

15   **C.   Political Pressure Resulted in a Flawed Consultation Process**

16        NMFS scientists' internal emails document their concern that the intense political pressure

17   from the Department of Interior was threatening the consultation process's scientific integrity.

18   After Interior told NMFS not to send sections of their first draft to peer review, a NMFS lead

19   scientist stated, "I think for DOI to dictate what NMFS can or cannot send to peer review

20   definitely raises a flag with respect to science integrity." Fuchs Decl., Ex. 14, May 28, 2019,

21   email from Maria Rea Re: Check in? Science integrity and peer review, NMFS FOIA Production

22   No. 0.7.115.14644. The direction from the Department of Interior "seemed completely

23   contradictory to the NOAA policy on scientific integrity from NOAA Administrative Order 202-

24   735D: Scientific Integrity"; directions from Interior to eliminate scientific review of some

25   _____

26        [1] According to one NMFS supervisor, staff suffered extreme stress in trying to meet this
     schedule, including "observable and self-identified serious physical ailments," and they were
27   "openly discussing sharing prescription antianxiety medications with each other." Fuchs Decl.,
     Ex. 66, NMFS Record at B_000049.
28

4

sections were "in direct conflict with the goals of the policy." Fuchs Decl., Ex. 15, Memorandum

for: ROC LTO Consultation, ARN# 151422-WCR2016-SA00300, Subject: Long-term Operation

of the Central Valley Project and State Water Project: Consultation Process" (Brown Memo);

printed in 166 Cong. Rec. E1067–E1068 (Nov. 24, 2020) (statement of Rep. Huffman). On June

12, 2019, NMFS scientist Cathy Marcinkevage wrote an email with the subject line, "Do the

Right Thing," in which she said she hoped "someone will find my right move, even if someone

else tries to bury it." Fuchs Decl., Ex. 16, NMFS FOIA Production No. 0.7.115.9376.

### D. NMFS Scientists' Final Biological Opinion, Submitted by the Deadline of July 1, 2019, Was Rejected, and the Team Was Replaced

Despite the political pressure and rushed process described above, and even though NMFS

was told that "the schedule does not allow time" for a jeopardy opinion, (Fuchs Decl., Ex. 34,

May 10, 2019, notes from ROC LTO Directors Meeting), NMFS produced a final biological

opinion on July 1, 2019, finding that Reclamation's Proposed Action would result in jeopardy to

the winter-run Chinook salmon. NMFS submitted this biological opinion to Barry Thom,

NMFS's West Coast Regional Administrator, along with a decision memo, clearance, and cover

letter. Fuchs Decl., Ex. 49, July 1, 2019, email from Howard Brown, Doc 072625069, email Re:

Final CVP/SWP BiOp, dated 7/1/2019 (previously filed at Doc. No. 153-12); *Id.*, Ex. 15, Brown

Memo. The same day, NMFS's Maria Rea sent an email that said, "Congratulations for meeting

the herculean task of preparing a complete and cleared Biop by July 1st!" Fuchs Decl., Ex. 51,

Doc 072616135, email Re: ROC-ON'ers, dated 7/1/2019 (previously filed at Doc. No. 153-2),

and another that said, "The BiOp is done so today is the last day to put things in our record!"

Fuchs Decl., Ex. 48, Doc 072625703, email Re: Got what you need?, dated 7/1/2019.

The purportedly final biological opinion was not accepted. Instead, immediately after the

opinion was submitted, most of the personnel who had worked on the jeopardy opinion were

replaced by a "Strike Team" of NMFS staff from other offices. The members of this Strike

Team—who had not been involved in the development of the jeopardy draft— immediately

began developing the 2019 BiOp challenged in the instant case.[2] NMFS Record at B_003336,

---

[2] Although the NMFS jeopardy opinion was not officially issued, it was obtained by the

5

California's Mem. P. & A. ISO Mot. to Complete and Supp. Admin. Records (1:20-cv-00426)

1    USFWS Record at FWS039920. On August 9, 2019, a group of water contractors reviewing the

2    Strike Team's new draft opinion wrote that it appeared "NMFS is not working closely enough

3    with Reclamation to accurately characterize the Proposed Action and better optimize Central

4    Valley Project operations for benefits to species and water users." USFWS Record at

5    FWS045784. Subsequently, on September 10, 2019, top NOAA officials, including Kristin

6    Petersen, Deputy Chief of NOAA's ESA Interagency Cooperation Division, took over the edits,

7    revising the proposed action, effects, stressors, and baseline section. NMFS Record at B_003336.

8    **II.   POLITICAL PRESSURE COMPELLED RECLAMATION TO VIOLATE THE 2009
          BIOLOGICAL OPINION'S REQUIRED MITIGATION MEASURES**

9

10          Meanwhile, as pressure mounted to increase water supply, Reclamation stopped complying

11   with certain key protections required by the 2009 NMFS Biological Opinion. For example, the

12   Department of the Interior directed Reclamation to stop work on a Reasonable and Prudent

13   Alternative (RPA) required under the 2009 Biological Opinion to reintroduce winter-run Chinook

14   salmon above Shasta Dam, apparently without consulting NMFS. Fuchs Decl., Ex. 21, August 2,

15   2018, email from Maria Rea to Federico Barajas, NMFS FOIA Production No. 0.7.115.14786;

16   August 9, 2018 email, NMFS FOIA Production No. 0.7.115.14788. A senior NMFS employee

17   stated in an internal email, "I don't think I have ever in 11 years see[n] a directed deliberate

18   action not to implement a required RPA." Fuchs Decl., Ex. 21, August 2, 2018, email from Maria

19   Rea to Federico Barajas NMFS FOIA Production No. 0.7.115.14786.

20                                **STANDARD OF REVIEW**

21          Although the APA limits the scope of judicial review to the administrative record, 5 U.S.C.

22   § 706, defendant agencies do not have unbridled discretion to assemble and certify their records.

23   Where, as here, the records certified by Federal Defendants are legally inadequate and

24   incomplete, and supplementation would further judicial review, this Court may order defendants

25   to add documents to the record.

26   _____

27   Los Angeles Times, where it is still publicly available. Bettina Boxall "A report shows Trump's
     water plan would hurt California salmon. The government hid it." L.A. Times: Climate &

28   Environment (August 21, 2019, 8:00 a.m.) https://www.latimes.com/ environment/story/2019-08-
     20/trump-california-water-salmon-farms.

## I.  FEDERAL DEFENDANTS MUST INCLUDE ALL RELEVANT DOCUMENTS IN THEIR RECORDS

The administrative record is "not necessarily those documents that the agency has compiled and submitted as 'the' administrative record." *Thompson v. U.S. Dept. of Labor*, 885 F.2d 551, 555 (9th Cir. 1989). Rather, "'[t]he whole record' includes everything that was before the agency pertaining to the merits of the decision." *Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993), quoting *Thompson* at 555–56. "The 'whole' administrative record, therefore, consists of all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson*, 885 F.3d at 555.

## II.  PLAINTIFFS CAN OVERCOME THE PRESUMPTION OF REGULARITY IN DEFENDANTS' RECORDS

Although an agency's designation and certification of the administrative record is entitled to a presumption of regularity, a plaintiff may overcome the presumption with clear evidence to the contrary. *McCrary v. Gutierrez*, 495 F. Supp. 2d 1038, 1041 (N. D. Cal. 2007) (citing *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993); *Pinnacle Armor, Inc.*, 923 F. Supp. 2d 1226, 1232 (E.D. Cal. 2013). Specifically, a plaintiff must identify "reasonable, non-speculative grounds for [the] belief that the documents were considered by the agency and not included in the record." *Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 6 (D.D.C. 2006) (cited in *Golden Gate Salmon Ass'n v. Ross*, No. 1:17-cv-01172 LJO-EPG, 2018 WL 3129849, at *4 (E.D. Cal. June 22, 2018). Once the plaintiff demonstrates that the administrative record as filed is incomplete, the court may order the agency to complete the record. *See, e.g.*, *Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, No. C-06-4884-SI, 2007 WL 3049869, at *4 (N.D. Cal. Oct. 18, 2007) (ordering completion of record to include data considered but not relied on by agency).

Here, the administrative records lack key documents that Federal Defendants undoubtedly considered, either directly or indirectly. Accordingly, California seeks to compel the completion of the records, including with documents showing the intense political and time pressure described above. In addition, those pressures resulted in the absence from the records of other

7

1   documents, which Federal Defendants may not have considered. California seeks to supplement

2   the records with those documents.

3       While this Court has sometimes construed a motion to compel completion of the record as a

4   motion to supplement the record, *see, e.g., Winnemem Wintu Tribe v. U.S. Forest Serv.*, No. 2:09-

5   CV-01072-KJM-KJ, 2014 WL 3689699, at *9 (E.D. Cal. July 24, 2014), it has more often and

6   more recently acknowledged the Ninth Circuit's distinction between completing and

7   supplementing the record. For example, in *Golden Gate Salmon Ass'n v. Ross*, No. 1:17-CV-

8   01172-LJO-EPG, 2018 WL 3129849, at *3–4 (E.D. Cal. June 22, 2018) the Court quoted

9   *Portland Audubon*, 984 F.2d at 1548 in stating, "An incomplete record must be viewed as a

10  fictional account of the actual decisionmaking process. When it appears the agency has relied on

11  documents or materials not included in the record, supplementation is appropriate." *Portland*

12  *Audubon*, 984 F.2d at 1548 (internal quotations and citations omitted). *See also Bay.org v. Zinke*,

13  No. 1:17-CV-01176-LJO-EPG, 2018 WL 3965367, at *3 (E.D. Cal. Aug. 16, 2018) (same).

## ARGUMENT

15      California seeks to both *complete* and *supplement* the administrative records.

16      As shown below, the administrative records certified in this case are incomplete and

17  inadequate. Most of the documents that California asks this Court to add to the records are "materials

18  that were actually a part of the agency's record [but] were not properly included, whether by design or

19  accident, [and] they should [therefore] be included in the record for the Court's review . . . ." *Cape*

20  *Hatteras Access Pres. All. v. U.S. Dep't of Interior*, 667 F. Supp. 2d 111, 114 (D.D.C. 2009).

21  Accordingly, California brings this motion to complete the records.

22      In addition, the Court may supplement an administrative record with documents that would

23  not have been part of the record, either because they are "post-decisional documents or evidence

24  acquired through discovery." *WildEarth Guardians v. U.S. Forest Serv.*, 713 F. Supp. 2d 1243,

25  1252–53 & n.5 (D. Colo. 2010).

26

27

28

8

California's Mem. P. & A. ISO Mot. to Complete and Supp. Admin. Records (1:20-cv-00426)

1   I.   THE ADMINISTRATIVE RECORDS ARE INCOMPLETE

2       A.   The NMFS Record Omits Documents Demonstrating Procedural
             Irregularities and Improper Political Influence in the Consultation Process

3            Numerous documents withheld from NMFS's administrative record demonstrate procedural

4   irregularities and improper political influence in the consultation process affecting the scientific

5   supportability of the biological opinions that process produced. *See* NMFS BiOp at 52. These

6   documents include correspondence and memoranda drafted by NMFS staff describing significant

7   pressure to speed through the reinitiation process, with a focus on maximizing exports rather than

8   ensuring adequate species protections, causing staff to repeatedly raise the requirement that

9   NMFS follow its own Scientific Integrity Policy. Notes taken by NMFS during a May 10, 2019,

10  Director's Meeting document the significant political pressure predetermining outcomes, as

11  described in the Factual Background above.

12           The NMFS record also omits the July 1, 2019, NMFS biological opinion that was

13  functionally final but not formally adopted, as well as documents demonstrating procedural

14  irregularities and deviations from standard scientific processes.[3] As noted above, the draft

15  revealed—among other things—that NMFS staff had concluded that the proposed action would

16  result in jeopardy for winter-run Chinook salmon. Fuchs Decl. Ex. 15. NMFS staff also prepared

17  a number of transmittal documents, emails, and memoranda that were (in some cases expressly)

18  intended for inclusion in the administrative record. Likewise, the records omit the transmittal

19  documents, emails, and memoranda that were to accompany the NMFS final opinion. Fuchs

20  Decl., Exs. 49–58.

21           These documents are clearly relevant, and they were considered—in some cases relied on—

22  by NMFS staff. They belong in the administrative record.

23

24

25

26       _____
             [3] A copy of the July 1 jeopardy opinion appears in Reclamation's administrative record
27  (USBOR0000005527) but not in NMFS's record. Documents shared among Federal Defendants
    that appear in one record and not another should be available for use against the agency in whose
28  record they do not appear. *S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, No.
    CIV S-06-2845 LKK-JFM, 2008 WL 3932358, at *4 (E.D. Cal. Aug. 26, 2008).

**B.    The NMFS Record Does Not Include Routine Communications**

NMFS omitted from the record a number of communications containing technical and background information that directly relate to its 2019 biological opinion, which NMFS released in response to a FOIA request. Fuchs Decl. Exs. 4–6. These communications look very similar to other communications that NMFS did include in its record. NMFS has never claimed that the omitted documents are protected by any privilege, and there is no material difference between the types of documents omitted and those included. NMFS has asserted either that it did not consider the omitted documents or that those documents were deliberative. In either case, the inclusion of similar documents, as well as the surrounding circumstances, should result in loss of the presumption of regularity and compel completion of the records with the omitted documents.

**C.    The Records Do Not Include All Communications with California Agencies**

The administrative records do not include numerous documents conveyed to or from various California public agencies regarding the reinitiation of consultation. Federal Defendants have agreed to add most, but not all, of these documents to the records.[4] Fuchs Decl., Ex. 4. These include numerous emails regarding the consultation agreement and the response to reinitiation of consultation. *Id.*

Exclusion of specific communications with California agencies was improper. Not only are communications with DWR relevant, but the law and their own policies require Federal Defendants to consider them in the consultation process. For example, section 6 of the ESA provides, "In carrying out the program authorized by this chapter, the Secretary shall cooperate to the maximum extent practicable with the States." And a February 22, 2016, USFWS policy explains the rationale for this rule: "State agencies often possess scientific data and valuable expertise on the status and distribution of endangered, threatened, and candidate species of wildlife and plants. State agencies are in a unique position to assist the Services in implementing all aspects of the Act." "Revised Interagency Cooperative Policy Regarding the Role of State

---

[4] Discussions are continuing as of the time this motion is submitted. If the parties reach agreement, we will notify the Court.

1    Agencies in ESA Activities," Fed. Reg., February 22, 2016 (Vol. 81), p. 8663. These

2    communications from their co-applicant on the reinitiation of consultation are part of the records.

3    **II.    THE OMITTED DOCUMENTS SHOULD NOT BE EXCLUDED FROM THE RECORDS
          EITHER UNDER THE DELIBERATIVE PROCESS PRIVILEGE OR BECAUSE THEY ARE**

4         **"DELIBERATIVE" BUT NOT PRIVILEGED**

5         The Court should reject Federal Defendants' omission of the documents California has

6    identified in this motion from the records based on their position that the documents are either

7    deliberative process privileged or "deliberative" but not privileged. Fuchs Decl., Ex. 4. As

8    discussed below, regardless of how the exclusion is characterized, the Court should order Federal

9    Defendants to add these documents to the records because the documents overcome the

10   presumption of regularity enjoyed by the records. See *Thompson*, 885 F.2d at 555–56.

11        **A.    The Court Should Reject Federal Defendants' Assertion of the Deliberative
              Process Privilege**

12        The Court should reject Federal Defendants' assertion of the deliberative process privilege.

13   This privilege permits a party to withhold from an administrative record all or part of a document

14   that is both "predecisional" and "deliberative." *Nat'l Wildlife Fed'n v. United States Forest Serv.*,

15   861 F.2d 1114, 1117 (9th Cir. 1988). The Ninth Circuit applies deliberative process protection

16   only to documents "containing opinions, recommendations, or advice about agency policies," and

17   excludes "[p]urely factual material." *F.T.C. v. Warner Comms., Inc.*, 742 F.2d 1156, 1161 (9th

18   Cir. 1984) (*Warner*). A party asserting the privilege bears the burden of proving both elements of

19   the test. *See, e.g., Carter v. U.S. Dep't of Commerce*, 307 F.3d 1084, 1088 (9th Cir. 2002) (citing

20   5 U.S.C. § 552(a)(4)(B)); *Assembly of State of Cal. v. U.S. Dep't of Commerce*, 968 F.2d 916,

21   920 (9th Cir. 1992) (citing 5 U.S.C. § 552(a)(3)). A reviewing court must weigh the burden of

22   proof "with an awareness that the plaintiff, who does not have access to the withheld materials,

23   'is at a distinct disadvantage in attempting to controvert the agency's claims.'" *Maricopa*

24   *Audubon Soc. v. U.S. Forest Serv.*, 108 F.3d 1089, 1092 (9th Cir. 1997), *quoting Ollestad v.*

25   *Kelley,* 573 F.2d 1109, 1110 (9th Cir. 1978).

26

27

28

                                              11

1      As shown below, the assertion of the deliberative process privilege by Federal Defendants

2 over several documents identified during the parties' meet-and-confer process[5] is mistaken

3 because (1) the privilege does not apply to the documents in question, (2) to the extent the

4 privilege does apply it was waived, and (3) California's need for the documents outweighs the

5 privilege.

6        **1.    The deliberative process privilege does not apply to certain documents**

7      As a threshold matter, the deliberative process privilege does not apply to drafts of the

8 biological opinions and related documents, including at least ten memoranda that NMFS staff

9 members specifically submitted for inclusion in the administrative record on July 1, 2019, with

10 (what they thought was) the completed biological opinion, because these documents show that

11 Federal Defendants deviated from applicable law and policy in preparing the 2019 BiOps. *See*

12 Fuchs Decl., Exs. 4–6. Governmental misconduct is frequently a reason to deny the application of

13 privilege. *See, e.g.*, *In re Sealed Case*, 121 F.3d 729, 738 (D.C. Cir. 1997) ("Where there is

14 reason to believe the documents sought may shed light on government misconduct, 'the privilege

15 is routinely denied,' on the grounds that shielding internal government deliberations in this

16 context does not serve "the public's interest in honest, effective government.") (quoting *Texaco*

17 *Puerto Rico, Inc. v. Department of Consumer Affairs*, 60 F.3d 867, 885 (1st Cir. 1995)); *see also*

18 *In re Comptroller of the Currency*, 967 F.2d at 634 ("the privilege may be overridden where

19 necessary . . . to 'shed light on alleged government malfeasance'") (quoting *Franklin Nat'l Bank*,

20 478 F. Supp. at 582).

21      Here, California and the *PCFFA* plaintiffs are aware of ten memoranda meeting these

22 criteria, and have seen three of these memoranda, one of which was recently read into the

23 Congressional Record. That memorandum, written by Howard Brown, the NMFS Policy Advisor

24 for the consultation process, states, "From the beginning of this consultation is was clear to me

25 that the pendulum was always going to swing in the favor of political decisions being made by the

26 Department of Interior (DOI) at the expense of the ESA Section 7 process and scientific

27

28       [5] Federal Defendants declined to provide a privilege log.

1   integrity." Fuchs Decl., Ex. 15, Brown Memo. The memorandum then provides a detailed

2   description of the many challenges NMFS faced during the consultation process, such as an

3   extremely aggressive timeline for completion of the opinion, DOI interference in the peer review

4   process that "breach[ed] the scientific integrity of the process," fundamental flaws in the

5   development of Reclamation's biological assessment that were carried over to the NMFS

6   biological opinion, and DOI resistance to following the best available science. *Id.* The *PCFFA*

7   plaintiffs are submitting, under seal, two other memoranda that belong in the record for similar

8   reasons.

9       Although the contents of the remaining seven memoranda are unknown, all ten of these

10  memoranda were apparently prepared expressly for inclusion in the administrative record, along

11  with the biological opinion finding that the proposed action would cause jeopardy to listed

12  species and adversely affect critical habitat. *See* Fuchs Decl., Exs. 15, 49–58. That jeopardy

13  opinion was withdrawn, and within days of its submission, most of the NMFS staff who had been

14  working on it were replaced. The final opinion, released a few months later, concluded the

15  opposite: the proposed action would not cause jeopardy. These facts suggest improper political

16  interference with the scientific process leading to a predetermined conclusion in disregard of the

17  scientific evidence.

18      Under these circumstances, the Court should reject Federal Defendants' efforts to exclude

19  the draft biological opinions, along with any memos to the file and related transmittal documents,

20  based on the deliberative process privilege.

21              **2.     Any applicable privilege has been waived by publication**

22      Even if the Court concludes that the privilege applies to some of these documents, all

23  documents that were released to the public have lost their privilege. *See In re McKesson*

24  *Governmental Entities Average Wholesale Price Litig.*, 264 F.R.D. 595, 600 (N.D. Cal. 2009);

25  *San Francisco Baykeeper v. U. S. Envtl. Prot. Agency*, No. C 19-05941 WHA, ___ F. Supp. 3d

26  ___, 2020 WL 5893392, at *5–6 (N.D. Cal. Oct. 5, 2020); *U.S. ex rel. Bagley v. TRW, Inc.*, 204

27  F.R.D. 170, 177 (C.D. Cal. 2001); *State of N.D. ex rel. Olson v. Andrus*, 581 F.2d 177, 181–82

28  (8th Cir. 1978). As discussed above, this applies to both the full draft NMFS BiOp released July

13

1   1, 2019, the partial USFWS BiOp released on or about the same date, and the memo to the file

2   authored by Brown and published in the Congressional Record. Fuchs Decl., Ex. 15, Brown

3   Memo.

### 3.   The need for these documents outweighs any qualified privilege

5   Finally, even assuming the documents are deliberative process privileged and the privilege

6   has not been lost through disclosure, the privilege is not absolute. The deliberative process

7   privilege is a qualified privilege that may be overcome if a party's "need for the materials and the

8   need for accurate fact-finding override the government's interest in non-disclosure." *Warner*, 742

9   F.2d at 1161. The factors used in this balancing test are: "1) the relevance of the evidence; 2) the

10   availability of other evidence; 3) the government's role in the litigation; and 4) the extent to

11   which disclosure would hinder frank and independent discussion regarding contemplated policies

12   and decisions." *Id.*[6] Each of these factors favors inclusion.

13   Under the first factor, the documents are relevant to this litigation because they directly

14   relate to the consultation process. For example, as discussed above, the documents show that

15   NMFS scientists were directed to take actions that "seemed completely contradictory to the

16   NOAA policy on scientific integrity from NOAA Administrative Order 202-735D: Scientific

17   Integrity." Fuchs Decl., Ex. 15, Brown Memo at E1068. The documents are therefore relevant for

18   evaluating whether the 2019 biological opinion was prepared consistent with scientific integrity

19   policies and applicable law, which requires consideration of the best available science.

20   Under the second factor, whether the plaintiffs "can adequately frame their arguments

21   based on the existing AR," *Gutierrez*, 2007 WL 763370, at *11, the answer is no. Although the

22   existing records sketch the severe time and political pressures that the agency staff were operating

23   under, the records do not give a full picture because Federal Defendants intentionally withheld

24   these documents, with a few exceptions. The Court cannot fully evaluate the legal sufficiency and

25   scientific integrity of the biological opinions without including these omitted documents.

26   _____

[6] Although these factors more commonly apply in discovery cases, the Eastern District has applied the *Warner* factors in determining whether to order inclusion of certain deliberative process privileged documents into an agency's administrative record. *See, e.g., Modesto Irrigation Dist. v. Gutierrez*, No. 1:06-CV-00453-OWW-DLB, 2007 WL 763370, at *10 (E.D. Cal. Mar. 9, 2007) (Gutierrez).

14

For the third factor, the Eastern District has interpreted the "government's role in the litigation" factor as an inquiry into government bad faith. *See Gutierrez* at *12; *Coal. for a Sustainable Delta v. Koch*, No. 108-CV-00397-OWW-GSA, 2009 WL 3378974, at *9 (E.D. Cal. Oct. 15, 2009) (the "government's role in the litigation" factor probes "whether there is any evidence of bad faith and/or misconduct"). Here, as discussed above, California has provided strong evidence of significant procedural irregularities in the consultation process, reflecting undue political influence to reach a desired result and apparent violations of the applicable scientific integrity policies.

Finally, including the documents at issue would not chill frank internal discussion within the agencies. In fact, it appears that the internal memos were drafted to memorialize concerns regarding undue political influence and documenting the stifling of scientific discourse. Thus, this factor also weighs against Federal Defendants.

Because all four *Warner* factors favor inclusion of these documents, the Court should reject Federal Defendants' privilege assertions and order that the documents be added to the administrative record.

**B.   The Court Should Reject Federal Defendants' Flawed "Deliberative" Exclusion Claim**

Federal Defendants have also withheld an unknown number of documents from the record on the basis that the documents are "deliberative" but not privileged. Fuchs Decl., Ex. 4. The case law does not support any such distinction. *See*, *e.g.*, *Nat'l Ass'n of Chain Drug Stores v. U.S. Dep't of Health & Human Servs.*, 631 F. Supp. 2d 23, 27 (D.D.C. 2009) (describing deliberative documents as "ordinarily privileged"); *see also Golden Gate Salmon Ass'n* at *5 (equating deliberative and privileged documents in holding that defendants may exclude such documents from administrative records and do not have to list them on a privilege log). And the distinction has no practical effect because the standard for deciding which documents qualify is the same: the documents in question must be "predecisional" to a final agency action and "deliberative." *Karnoski v. Trump*, 926 F.3d 1180, 1196 (9th Cir. 2019). Whether Federal Defendants characterize excluded documents as "deliberative" or deliberative-process privileged, Federal

15

1    Defendants appear to concede that the agency decisionmakers considered—or even relied on—

2    them. Fuchs Decl., Ex. 4. The documents should therefore be in the records.

3    **III.   THE COURT SHOULD CONSIDER CERTAIN EXTRA-RECORD EVIDENCE**

4          California requests that the Court supplement the record with and consider certain extra-

5    record evidence, including documents demonstrating improper political influence, scientific

6    articles, documents showing that Reclamation stopped complying with the requirements of the

7    2009 NMFS biological opinion before the 2019 opinion was issued, and documents prepared for

8    the Shasta Dam Raise project.

9          As noted above, the Court may consider extra-record evidence: (1) to determine whether

10   the agency has considered all relevant factors and explained its decision, (2) if the agency has

11   relied on documents not in the record, (3) to explain technical terms or complex subject matter, or

12   (4) when the plaintiff make a showing of agency bad faith. *Lands Council v. Powell*, 395 F.3d

13   1019, 1030 (9th Cir. 2005).

14       **A.    The Court Should Add Documents showing that Reclamation prematurely
               stopped complying with the 2009 biological opinion**

15         Emails obtained in response to FOIA requests should have been included in the record

16   because they demonstrate that NMFS did not consider a "relevant factor," namely, whether the

17   mitigation measures identified in the 2019 BiOps are reasonably certain to occur. These emails

18   indicate that Reclamation stopped complying with certain requirements from the 2009 biological

19   opinion before Reclamation adopted the 2019 biological opinions. To the extent any of these

20   documents showing Reclamation's failure to comply with required mitigation measures post-date

21   issuance of the 2019 Biological Opinions, California requests that they be considered by this

22   Court for the limited purpose of determining whether the agencies had considered "all relevant

23   factors" in preparing the 2019 Biological Opinions—specifically, "whether mitigation outlined by

24   the adaptive management process is reasonably certain to occur." *Bay.org v. Zinke*, No. 1:17-CV-

25   01176-LJO-EPG, 2018 WL 3965367, at *9 (E.D. Cal. Aug. 16, 2018).

26

27

28

**B.     The Court Should Add Environmental Documents Prepared for the Shasta Dam Raise Project**

The 2015 USFWS report on species impacts of the Shasta Dam Raise project should be included in the records, along with the draft Supplemental Environmental Impact Statement that Reclamation issued in August 2020. These documents show that in 2015, USFWS concluded that the Shasta Dam Raise project would have a negative impact on listed species in the Delta. These impacts were never addressed or resolved. The 2019 Biological Opinions incorporated the Shasta Dam Raise project into the Proposed Action but specifically reserved consideration of its impacts for a subsequent consultation. That consultation never happened.

Instead, in August 2020, Reclamation issued its draft Supplemental Environmental Impact Statement, which concluded that no further environmental review for the Shasta Dam Raise project was necessary, despite the significant operational changes enabled by the 2019 Biological Opinions. But significant anticipated species impacts remain unanalyzed and unaddressed. Yet the only Section 7 consultation for the project occurred in the 2019 Biological Opinions. That consultation was defective, however, as alleged in California's first amended complaint, because it deferred to the Shasta Dam Raise analysis (which never occurred). (Doc. No. 51, ¶ 94; *see also* ¶¶ 105 118, 126, Ex. A (60-day notice letter), at 28.) Because the 2019 Biological Opinions purport to provide incidental take coverage for operations associated with the Shasta Dam Raise, the Federal Defendants themselves have put the adequacy of the underlying consultation for that project at issue in this case. NMFS BiOp at 203; USFWS BiOp at 378. The Shasta documents should be in the records.

**IV.     THE CERTIFICATIONS DEMONSTRATE THAT THE USFWS AND NMFS RECORDS WERE NOT PROPERLY COMPILED**

The USFWS and NMFS record certifications are legally insufficient because: (1) the certification for the USFWS record (Doc. No. 143-3) states that the record is limited only to the Delta smelt; and (2) the certification for the NMFS record (Doc. No. 143-5) states that the record incorporates only some documents from the USFWS record without stating how it was determined which documents to include and which not to. Because their certifications are defective, the records lose their presumption of regularity and should be re-compiled and re-

17

1  certified. *San Luis & Delta-Mendota Water Auth. v. Jewell*, No. 1:15-CV-01290-LJO-GSA, 2016

2  WL 3543203, at *18 (E.D. Cal. June 23, 2016) (*Jewell*).

3  **A.    The USFWS Certification Is Improperly Limited**

4  The USFWS certification filed in this action—and in the related *PCFFA* case—is defective

5  because it reveals that the records do not comprise "all documents and materials directly or

6  indirectly considered by the agency decision-makers," as required by Ninth Circuit law.

7  *Thompson*, 885 F.2d at 555. The certification filed in this case (Doc. No. 143-3) expressly states

8  that it is limited to Delta smelt, even though the complaint raises allegations going beyond the

9  Delta smelt:

10  Because only the portions of the 2019 BiOp related to the delta smelt are at issue in
11  this case, the Administrative Record is limited to documents relevant to those
    portions.

12  ***

13  I hereby certify that, to the best of my current knowledge, the documents identified in
14  the Index accompanying this declaration constitute the true, accurate, and complete
    Administrative Record for the delta smelt portions of the 2019 BiOp.

15  (Doc. No. 143-3, ¶¶ 3, 5.) The certification thereby demonstrates conclusively that the USFWS

16  record is incomplete, and that USFWS arbitrarily and impermissibly limited the scope of its

17  administrative record, for three reasons.

18  First, the challenged agency action, as raised in the First Amended Complaint, Doc. No. 51,

19  is the 2019 USFWS biological opinion, and not some portion of it. (Doc. No. 51, ¶ 4.) Therefore,

20  the administrative record must contain all documents relating directly or indirectly to the 2019

21  USFWS biological opinion and not some unilaterally defined subset of those documents. *See Fort*

22  *Sill Apache Tribe v. Nat'l Indian Gaming Comm'n*, 345 F. Supp. 3d 1, 6 (D.D.C. 2018).

23  Second, even if the law allowed Federal Defendants to limit the record to documents related

24  to particular claims raised in the litigation, the USFWS administrative record would still be

25  incomplete because USFWS's interpretation of the complaint is far too narrow. Under notice-

26  pleading rules, the issues are defined by the claims for relief in the First Amended Complaint.

27  Federal Rule of Civil Procedure 8(a) requires only that a pleading contain "a short and plain

28  statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556

18

1   U.S. 662, 678–79 (2009). The First Amended Complaint did this, while referencing a "non-

2   comprehensive list of . . . deficiencies." Doc. No. 51 at ¶ 89. Thus, allegations as to specific listed

3   species are *examples* of deficiencies in the 2019 USFWS biological opinion, not a closed set.

4          Third, the second claim for relief expressly alleges ESA violations that fall outside a search

5   for documents related to Delta smelt. For example, the second claim for relief alleges that the

6   2019 USFWS Biological Opinion "fails to analyze key components of the proposed action,

7   including but not limited to a proposal to raise the height of Shasta Dam, in contravention of the

8   requirement that a biological opinion assess all aspects of a project." (Doc. No. 51 at ¶ 118.) The

9   Attorney General's comment letter on the Shasta Dam Raise project, Fuchs Decl., Ex. A,

10  identified significant, still-unanalyzed impacts on listed species, as well as other impacts,

11  resulting from the project. The allegation regarding the deficient analysis of the Shasta Dam Raise

12  impacts underscores the impropriety of limiting the USFWS record to documents bearing only on

13  Delta smelt.

14         USFWS also failed to describe how it determined what records it contends relate solely to

15  "the delta smelt portions of the 2019 BiOp." Without some articulation of the decision

16  mechanism, it is impossible to determine if the record lacks documents that should be included,

17  such as all documents relating to the Shasta Dam Raise project. In *Gill*, where the certification

18  stated that the record included "information considered in the development" of the legal issue,

19  rather than "all documents and materials directly or indirectly considered by agency-

20  decisionmakers," the district court remanded the record to the agency, requiring a new search that

21  would meet the standard. *Gill*, 2015 WL 9258075, at *3, 6. Here, likewise, USFWS must re-

22  compile its record and file and certify a new, complete record. At a minimum, USFWS must

23  amend its certification to affirm that the record contains all documents and materials directly or

24  indirectly considered by the agency decision-makers relating to the USFWS 2019 biological

25  opinion.

26  **B.    The NMFS Certification Suggests Arbitrariness in the Record Compilation**

27         The certification filed by NMFS (Doc. No. 143-5) also suggests arbitrariness in the

28  compilation of the NMFS record because it purports to include some—but not all—documents

19

1   from the USFWS administrative record without identifying or describing the criteria NMFS used

2   to decide which USFWS documents to include. The certification states, "NMFS hereby

3   incorporates by reference *certain* documents from the U.S. Fish and Wildlife Service AR into the

4   NMFS AR as specifically identified in Section E of the NMFS AR." Doc. No. 143-5, ¶ 3

5   (emphasis added). While Section E identifies "certain" documents incorporated by reference,

6   NMFS provides no information as to why it incorporated those "certain" documents and not

7   others.

8        Although courts apply a presumption of completeness to a properly certified record, the

9   Eastern District has held that a record loses that presumption when the certification "'on its face,

10  appears to contain less than all the documents and materials directly or indirectly considered by

11  the agency in making its decision.'" *San Luis & Delta-Mendota*, 2016 WL 3543203, at \*18

12  (quoting *Gill v. Dep't of Justice*, No. 14-CV-03120-RS (KAW), 2015 WL 9258075, at \*5 (N.D.

13  Cal. Dec. 18, 2015)). For that reason, a defective certification like USFWS's here can "suggest[]

14  noncompliance with the standard according to which an administrative record should be

15  compiled." *Gill*, 2015 WL 9258075, at \*6

16       Federal Defendants' actions in the meet-and-confer process preceding this motion

17  underscore the apparently arbitrary nature of their determination as to which documents from the

18  USFWS record would be included in the NMFS record. California listed emails exchanged

19  between NMFS and USFWS that had appeared in the USFWS record and asked for those emails

20  to be included in the NMFS record. Fuchs Decl., Ex. 2. NMFS agreed to add some, but not all, of

21  those emails to its record. Fuchs Decl., Ex. 4. Compounding their failure to explain which

22  documents were originally included in the NMFS record, Federal Defendants disclosed no

23  reasoned principle underlying their determination of which documents they agreed to add to the

24  NMFS record. *Id.*

25       Federal Defendants state that "the agencies included in their records the documents they

26  considered, excluding deliberative and privileged materials." Fuchs Decl., Ex. 4. As discussed

27  below, without a privilege log, neither the parties nor the Court can judge whether this statement

28  is true. Federal Defendants have lost the presumption of regularity by failing to explain why

20

1   documents shared among them appear in one agency's record and not in another. They have not

2   regained that presumption by agreeing to add some but not all such documents without

3   explanation. *San Luis & Delta-Mendota*, 2016 WL 3543203, at *18.

4       The USFWS and NMFS certifications show that the agencies did not apply the correct

5   standard in compiling their records, so the records must be recompiled.

6   **V.   FEDERAL DEFENDANTS SHOULD PROVIDE A PRIVILEGE LOG**

7       During the meet-and-confer process, Federal Defendants stated that they withheld from the

8   records all documents that they considered "deliberative," including many documents they

9   provided in response to FOIA requests, and all documents that they deemed "deliberative process

10  privileged." In light of the large number of documents that Federal Defendants likely withheld

11  under their exceptionally broad view of Eastern District law, the Court should either order them

12  to add all withheld documents, including those withheld as "deliberative but not privileged," or

13  provide a privilege log—including the latter category—so that counsel and the Court can identify

14  such documents and evaluate whether they were properly withheld.

15      While the Eastern District has been reluctant to order production of a privilege log, this case

16  presents unusual circumstances warranting that order, as described in more detail above. Federal

17  Defendants bear the burden of establishing that the deliberative process and any other privileges

18  apply. *See Assembly of State of Cal. v. U.S. Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir.

19  1992) (imposing burden on the party claiming the privilege). In particular, Federal Defendants

20  must satisfy two preliminary procedural requirements to support a claim of privilege: (1) they

21  must provide a "formal claim of privilege, lodged by the head of the department which has

22  control over the matter, after actual personal consideration by that officer," *United States v. Rozet*,

23  183 F.R.D. 662, 665 (N.D. Cal. 1998) (citing *Unites States v. Reynolds*, 345 U.S. 1, 7–8 (1953)),

24  and (2) they must specify the information they are claiming privilege for and give "precise and

25  certain reasons" for asserting confidentiality. *L.H. v. Schwarzenegger*, No. S-06-2042 LJJ-GGH,

26  2007 WL 2009807, at *2 (E.D. Cal. July 6, 2007) (citing *United States v. O'Neill*, 619 F.2d 222,

27  226 (3d Cir. 1980); *see also In re Sealed Case*, 856 F.2d 268 (D.C. Cir. 1988); Moore's Federal

28  Practice, Civil § 26.52.

21

1     Further, NMFS previously provided a privilege log in another Eastern District ESA case,

2   expressly acknowledging that it bears the burden on privilege claims: "To meet its burden to

3   substantiate its claims of privilege, the agency must offer oral testimony or affidavits that are

4   'detailed enough for the district court to make a de novo assessment of the government's claim of

5   exemption." Opposition to Plaintiffs' Motion to Augment the Administrative Record, *Modesto*

6   *Irrigation District v. Gutierrez*, 2007 WL 669718 (E.D. Cal.) (quoting *Maricopa Audubon Soc'y*

7   *v. U. S. Forest Serv.*, 108 F.3d 1089, 1092 (9th Cir. 1997) (internal quotation marks and citation

8   omitted)). In that case, NMFS submitted a privilege log and a declaration "which set[] out the

9   factual predicate for each of the privileges claimed." *Id.* There is no reason why Federal

10   Defendants cannot also do so here.

11                                          **CONCLUSION**

12     The three administrative records certified in this case are demonstrably incomplete. The

13   available documents strongly suggest that Federal Defendants' consultation, Biological Opinions,

14   and processes for selecting documents for their records are all legally deficient.

15     In addition, the available evidence also supports a holding that the records should be

16   supplemented because Federal Defendants have misconstrued the deliberative process privilege.

17   Applying an exceptionally broad interpretation of a couple of Eastern District orders, Federal

18   Defendants withheld an unknown number of documents as "deliberative but not privileged," and

19   incorrectly assert the privilege as to several other documents. The Court should reject these

20   arguments and order Federal defendants to complete the records. Additionally, the Court should

21   consider extra-record evidence showing that Federal Defendants failed to consider all relevant

22   factors, and order Federal Defendants to provide a privilege log for withheld documents. Finally,

23   because USWFS compiled its record under an incorrect standard, USFWS must recompile the

24   record.

25

26

27

28

1    Dated: December 18, 2020                    Respectfully Submitted,

2                                                XAVIER BECERRA
                                                 Attorney General of California
3                                                TRACY L. WINSOR
                                                 Supervising Deputy Attorney General

4

5                                                /s/ DANIEL M. FUCHS

6

7                                                DANIEL M. FUCHS
                                                 Deputy Attorney General
8                                                Attorneys for Plaintiffs
                                                 California Natural Resources Agency,
9                                                California Environmental Protection
                                                 Agency, and People of the State of
10                                               California by and through Xavier Becerra,
                                                 Attorney General of the State of California

11

12   SA2019300725
     34676899.docx

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

23