UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS, *et al.*,<br><br>                    Plaintiff,<br><br>          v.<br><br>WILBUR ROSS, *et al.*,<br><br>                    Defendants. | No. 1:20−cv−00431−DAD−EPG<br><br>ORDER GRANTING MOTION TO STAY UNTIL SEPTEMBER 30, 2021<br><br>(Doc. No. 271) |
| THE CALIFORNIA NATURAL RESOURCES AGENCY, *et al.*,<br><br>                    Plaintiffs,<br><br>          v.<br><br>WILBUR ROSS, *et al.*,<br><br>                    Defendants. | No. 1:20-cv-00426-DAD-EPG<br><br>ORDER GRANTING MOTION TO STAY UNTIL SEPTEMBER 30, 2021<br><br>(Doc. No. 185) |

/////

/////

/////

/////

1

Plaintiffs[1] in the above-captioned actions bring closely related claims against the National Marine Fisheries Service ("NMFS"), the U.S. Fish and Wildlife Service ("FWS"), the U.S. Bureau of Reclamation ("Reclamation"), and various official representatives of those agencies (collectively, "Federal Defendants"). (*CNRA*, Doc. No. 51; *PCFFA*, Doc. No. 52.) Both cases involve challenges to the adoption by NMFS and FWS, respectively, of a pair of "biological opinions" issued in 2019 pursuant to the Endangered Species Act ("ESA"), 16 U.S.C § 1531 *et seq*. Those biological opinions address the impact of Reclamation's updated plan for the long-term operation of the Central Valley Project ("CVP") and the State Water Project ("SWP") (the "Proposed Action") on various ESA-listed species.

Before the court for decision are Federal Defendants' identical motions to stay, filed in both cases. From a practical perspective, the only deadlines that will be directly impacted by the requested stays—which seek a pause in all litigation activity up to and through September 30, 2021—relate to pending motions brought by both sets of plaintiffs to expand the respective administrative records. Although the administrative record motions were initially filed in December 2020 (Doc. No. 224[2]), Federal Defendants have requested and obtained several stipulated extensions of their deadlines for filing oppositions, the latest of which expired on July 19, 2021. (Doc. No. 270.) In lieu of filing oppositions, Federal Defendants filed these motions to stay on July 14, 2021. (Doc. No. 271)

Federal Defendants' request is governed by the standard set forth in *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). *See Elec. Frontier Found. v. Off. of Dir. of Nat. Intel.*, No. C 08-01023 JSW, 2009 WL 773340, at *1 (N.D. Cal. Mar. 23, 2009) (applying *Landis* factors to a stay request premised upon need for review of changed policies promulgated by new

---

[1] Plaintiffs in *Pacific Coast Federation of Fishermen's Associations v. Ross*, 1:20-cv-00431-DAD-EPG (*PCFFA*), are a coalition of six environmental organizations led by PCFFA. Plaintiffs in *California Natural Resources Agency v. Ross*, No. 1:20-cv-00426-DAD-EPG (*CNRA*), are the People of the State of California, California's Natural Resources Agency, and California's Environmental Protection Agency.

[2] Because many of the same documents were filed in both cases, unless otherwise noted, the court will reference here only docket entries from *PCFFA*.

administration). In determining whether to grant a stay, courts in the Ninth Circuit weigh the "competing interests which will be affected by the granting or refusal to grant a stay," including:

> [1] the possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*Lockyer v Mirant*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).

   Federal Defendants contend that the stay will allow several parallel administrative processes to proceed and that those processes may "bear significantly upon these cases." (Doc. No. 272 at 9.) Among other things, Federal Defendants indicate that they have "committed" to reinitiate consultation under Section 7 of the ESA on the biological opinions challenged in these cases by October 1, 2021. (*Id*. at 10.) In addition, federal and state regulators presently are engaged in a process designed to "reconcile" the Proposed Action as evaluated in the challenged biological opinions with measures imposed by state regulators under the California Endangered Species Act ("CESA") to protect CESA-listed species. (*Id*. at 9.) The primary reason offered by Federal Defendants in support of the requested stay is that it will conserve federal agency staff resources that are needed to deal with the ongoing drought emergency impacting CVP/SWP operations. (*Id*. at 11–12.)

   Perhaps because relevant state agencies are engaged directly in the above-mentioned "reconciliation" process with Federal Defendants, the state agency plaintiff in *CNRA* does not object to the stay. (*CNRA*, Doc. No. 192.) The *PCFFA* plaintiffs, however, do object, arguing: (1) the proposed stay will harm their interests in having their claims resolved in a timely manner; (2) meanwhile, project operations, which remain subject to the challenged biological opinions, are continuing to harm the ESA-listed species of concern; and (3) Federal Defendants have not demonstrated a sufficient need for the stay. (Doc. No. 278.)

   As to the first and second points raised by the *PCFFA* plaintiffs, the essence of their argument is not that the several weeks between now and September 30, 2021 will dramatically

3

impact the overall speed of this highly complicated lawsuit.[3]  Rather, their core concern appears to be Federal Defendants' seeming (at least from the *PCFFA* plaintiffs' perspective) unwillingness to grapple with the process of establishing the kind of interim regulatory regime plaintiffs believe will be required should the planned ESA reconsultation actually be triggered on October 1.  (*See id*. at 16.)  The record indicates that in this critically dry year, many aspects of CVP/SWP operations are being governed by regulatory controls other than the challenged biological opinions.  (*See* Doc. No. 272 at 7 (Federal Defendants indicating that state-imposed requirements under State Water Resources Control Board Decision-1641 are now "primarily driving CVP/SWP" operations).)  Nonetheless, the *PCFFA* plaintiffs maintain that harm to the species of concern is ongoing and that at least some of that harm can be traced to the challenged biological opinions.  (*See id*. at 19–23.)  Whether and to what extent the challenged biological opinions are to blame for the current dire situation was the subject of extensive briefing and argument before this court last year and remains a central dispute in these lawsuits.  It is simply unrealistic for the court to engage with these issues in earnest in a timeframe that is relevant to the pending motion to stay.  The papers filed by the parties in connection with the motion to stay, including those filed by defendant intervenors, make this abundantly clear.  (*See* Doc. Nos. 281, 282.)  Yet, the court shares the *PCFFA* plaintiffs' concern that what <u>really</u> matters is not the current proposed stay but what happens <u>next</u>.  Federal Defendants do appear to be (likely erroneously) assuming that merely re-initiating consultation will moot the remainder of the *PCFFA* lawsuit.  There is arguably analogous, persuasive case authority that suggests otherwise.  *NRDC v. Norton*, No. 1:05-cv-01207-OWW-LJO, 2007 WL 14283, at *6 (E.D. Cal. Jan. 3, 2007) (declining to stay a challenge to earlier version of the biological opinions at issue in this case after the parties failed to reach an interim agreement as to how to operate the CVP and SWP while re-consultation took place).

/////

---

[3] The PCFFA plaintiffs also make the more direct argument that further delay in resolving the pending administrative record motions is impeding their and the public's interest in having certain disputed documents unsealed.  (Doc. No. 278 at 17.)  However, why this unsealing is required on a particular timeline is not clear to the court.

4

1        The *PCFFA* plaintiffs also question Federal Defendants' assertion that substantial agency staff resources (as opposed to Department of Justice attorney time) will be required for the Federal Defendants to finalize their opposition to the pending motion to supplement the administrative record in *PCFFA*. (Doc. No. 278 at 23–25.) Federal Defendants double down on their position in reply, claiming that the same staff who must review the "enormous number" of documents implicated by plaintiffs' administrative record motions are also "absorbed in managing the system under extreme drought conditions while also attempting to complete the 2019 biological opinion reconsideration and reconciliation process and reinitiate consultation." (Doc. No. 280 at 4.) The *PCFFA* plaintiffs correctly point out that this assertion is at least in part inconsistent with Federal Defendants' prior representations that they already have been working on evaluating the "issues presented and specific documents identified" in the administrative record motions. (*See* Doc. 272 at 4.) Moreover, it is well established that simply being required to defend a case is not generally considered a hardship warranting the granting of a stay. *See Ctr. For Biological Diversity v. Ross*, 419 F. Supp. 3d 16, 22 (D.D.C. 2019) (rejecting the argument that a lawsuit will divert substantial agency resources). It seems likely that the reality lies somewhere in between the parties' dueling representations on this point. The court has no doubt that agency staff will need to be involved in responding to the pending motion, but just how much of a burden that task will be vis-à-vis staff's other duties remains unclear.

         The court finds the *PCFFA* plaintiffs' position persuasive in many respects. Federal Defendants' showing of harm in the absence of a stay is weak, and the extent to which the proposed stay will end up conserving party or judicial resources remains unclear. Moreover, the *PCFFA* plaintiffs are legitimately concerned that the present situation on the ground is dire for at least some of the species of concern in this lawsuit. The court is equally concerned that, at least insofar as the briefing on the motion to stay reveals what is actually happening on the ground, Federal Defendants have not yet fully engaged in the serious task of determining how the projects will be operated during any interim period if ESA-consultation is re-initiated. It is unclear from the present record whether all parties are grappling with these issues with the kind of urgency they appear to warrant.

All that having been said, September 30 is fast-approaching, and the court believes that the requested stay is likely to be at least somewhat beneficial for judicial and party efficiency. The court also concludes that the proposed stay will have little practical impact on the overall pace of this litigation. For all those reasons, the motions to stay both *CNRA* and *PCFFA* through September 30, 2021 are GRANTED. The parties shall file a <u>joint</u> status report on or before October 1, 2021, outlining their respective positions as to how these cases should proceed thereafter. Federal Defendants are put on notice that the court will expect a great deal more introspection in connection with future filings regarding the continued course of these actions. The court stands ready to dedicate its extremely scarce time and resources to these cases. All parties should be prepared to do the same.

IT IS SO ORDERED.

Dated:   **August 19, 2021**                                    /s/ Dale A. Drozd
                                                                 UNITED STATES DISTRICT JUDGE

6