1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    PACIFIC COAST FEDERATION OF              No. 1:20-cv-00431-DAD-EPG
      FISHERMEN'S ASSOCIATIONS, *et al*.,

12                                             <u>ORDER DENYING WITHOUT
                         Plaintiff,            PREJUDICE MOTION FOR LEAVE TO
13                                             AMEND ANSWER</u>

                  v.
14                                             (Doc. No. 311)

      GINA RAIMONDO, *et al.*,
15

16                       Defendants.

17    THE CALIFORNIA NATURAL                    No. 1:20-cv-00426-DAD-EPG
      RESOURCES AGENCY, *et al*.,
18
                                               <u>ORDER DENYING WITHOUT
19                       Plaintiffs,           PREJUDICE MOTION FOR LEAVE TO
                                               AMEND ANSWER</u>
20                v.
                                               (Doc. No. 215)
21    GINA RAIMONDO, *et al.*,

22                       Defendants.

23

24

25    /////

26    /////

27    /////

28    /////

                                        1

1

**INTRODUCTION**

2        Plaintiffs[1] in the above-captioned actions bring closely related claims against the National

3  Marine Fisheries Service ("NMFS"), the U.S. Fish and Wildlife Service ("FWS"), the U.S.

4  Bureau of Reclamation ("Reclamation"), and various official representatives of those agencies

5  (collectively, "Federal Defendants").  (*CNRA*, Doc. No. 51; *PCFFA*, Doc. No. 52.[2])  Both cases

6  involve challenges to the adoption by NMFS and FWS, respectively, of a pair of "biological

7  opinions" issued in 2019 pursuant to the Endangered Species Act ("ESA"), 16 U.S.C § 1531 *et*

8  *seq*.  Those biological opinions address the impact of Reclamation's updated plan for the long-

9  term operation of the Central Valley Project ("CVP") and the State Water Project ("SWP") (the

10  "Proposed Action") on various ESA-listed species.

11        These cases were stayed for some time to allow Federal Defendants to reinitiate

12  consultation under Section 7 of the ESA regarding the challenged biological opinions and to

13  allow federal and state regulators to engage in a process designed to "reconcile" the Proposed

14  Action as evaluated in the challenged biological opinions with parallel species protection

15  measures imposed by state regulators.  (*See* Doc. No. 285.)  Federal Defendants formally

16  reinitiated consultation on the challenged biological opinions on September 30, 2021.  (Doc. No.

17  293.)

18        Federal Defendants and the State Plaintiffs reached agreement in the context of the *CNRA*

19  case as to how the CVP and SWP should be operated through September 30, 2022 while

20  reinitiated consultation is ongoing.  (Doc. No. 296 at 2.)  That agreement was initially described

21  in a five-page, proposed "Interim Operations Plan" ("IOP") attached to a joint status report

22  submitted to this court on October 14, 2021.  (Doc. No. 296-1.)  The proposal has been refined

23  somewhat in recent weeks, with the current IOP set forth in the form of a proposed order lodged

24

25

26

27

[1]  Plaintiffs in *Pac. Coast Fed'n of Fishermen's Ass'ns v. Raimondo*, 1:20-cv-00431-DAD-EPG (*PCFFA*), are a coalition of six environmental organizations (collectively referenced herein as "PCFFA").  Plaintiffs in *Cal. Nat. Res. Agency v. Raimondo*, No. 1:20-cv-00426-DAD-EPG (*CNRA*), are the People of the State of California, California's Natural Resources Agency, and California's Environmental Protection Agency ("State Plaintiffs").

28

[2]  Hereinafter, unless otherwise noted, the docket references in this order are to the docket numbers in *PCFFA*.

with the court.  (Doc. No. 313-1.)  Federal Defendants have moved in both related cases for voluntary remand without vacatur of the 2019 biological opinions, and further request that the court impose the IOP as a form of interim injunctive relief.  (Doc. No. 313.)  If this request were to be granted, the 2019 biological opinions would remain in place, but as modified by the IOP.  (*Id*.)  State plaintiffs in *CNRA* join in the Federal Defendants' motion.  (*CNRA*, Doc. No. 220.)  Plaintiffs in the *PCFFA* case intend to file a motion seeking additional forms of injunctive relief, since it is their position that the IOP is not sufficiently protective of the ESA-listed species at issue.  (Doc. Nos. 296 at 3–4; 307.)  Defendant intervenors indicate that they intend to oppose any form of relief that would operate to modify the operational parameters set forth in the challenged biological opinions.  (Doc. Nos. 296 at 7–18; 307.)  The court has set an aggressive briefing schedule, particularly given the complexity of the issues raised, to ensure that the motions pertaining to remand and to the nature and scope of interim injunctive relief will be ripe in January 2022.  (Doc. No. 315.)

Meanwhile, one set of defendant-intervenors, the State Water Contractors ("SWC")[3], has moved to amend its answer in each of the related cases (Doc. No. 311; *CNRA* Doc. No. 215) to add the following three proposed cross-claims against Federal Defendants:

(1) that Reclamation violated the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–06, and the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq*., by "approv[ing]" the IOP without subjecting the IOP to appropriate environmental review;

(2) that all Federal Defendants violated the APA and ESA § 7(a)(2), 16 U.S.C. § 1536(a)(2), by "approv[ing]" the IOP without engaging in appropriate consultation to ensure that the operational changes embodied in the IOP will not jeopardize the continued existence of ESA-listed species and/or adversely modify their critical habitat; and

/////

---

[3]  SWC alleges that it is a non-profit corporation consisting of 27 public water agencies that provide water to 27 million Californians and 750,000 acres of farmland.  (Doc. No. 311-2 at 33.)  SWC's members include the Metropolitan Water District of Southern California, Kern County Water Agency, Central Coast Water Agency, and Solano County Water Agency.  (*See* Doc. No. 63-4 at 2.)

3

1       (3) that all Federal Defendants violated the APA and Section 4004 of the Water

2       Infrastructure Improvements for the Nation ("WIIN") Act, Pub. L. No. 114-322 (2016), by

3       failing to abide by certain procedures applicable to ESA consultation related to the CVP

4       and SWP.

5 (*See* Doc. No. 311-2 (SWC's proposed first amended answer).)  In conjunction with the motions

6 to amend, SWC has proposed the filing of a motion for summary judgment addressing their cross-

7 claims on December 16, 2021, with the apparent intent to merge that briefing with the schedule

8 the court has set regarding the motion for remand without vacatur and related requests for interim

9 injunctive relief.

10       Federal Defendants oppose SWC's motions to amend (Doc. No. 318, *CNRA* Doc. No.

11 227), and are joined in opposition by the *PCFFA* plaintiffs (Doc. No. 318) and *CNRA* plaintiffs

12 (*CNRA* Doc. No. 229).  Considering the need for an expedited ruling, the court did not authorize

13 the filing of reply briefs.  Having carefully considered the motions and oppositions in the context

14 of the entire record, the court will deny the motions to amend without prejudice.

15                                     **ANALYSIS**

16       A motion to amend a pleading is governed by Federal Rule of Civil Procedure 15, which

17 provides that the court should grant leave "freely . . . when justice so requires."  Fed. R. Civ. P.

18 15(a)(2).  Courts should consider several factors weighing against granting leave to amend,

19 including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to

20 cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by

21 virtue of allowance of the amendment [and] futility of the amendment[.]"  *Foman v. Davis*, 371

22 US 178, 182 (1962).  "Of the *Foman* factors, prejudice to the opposing party carries the most

23 weight."  *Brown v. Stored Value Cards, Inc*., 953 F.3d 567, 574 (9th Cir. 2020) (citing *Eminence*

24 *Capital, LLC v. Aspeon, Inc*., 316 F.3d 1048, 1052 (9th Cir. 2003)).  "Absent prejudice, or a

25 strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule

26 15(a) in favor of granting leave to amend."  *Eminence*, 316 F.3d at 1052.  Here, the court

27 discusses only the question of futility in detail because the strength of the showing as to that

28 factor alone justifies denial of amendment here.  *See Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th

4

1   Cir. 2004) ("Futility alone can justify the denial of a motion for leave to amend.").

2          The first proposed cross-claim is premised upon the allegation that Federal Defendants'

3   "approval" of the IOP violated NEPA because Federal Defendants failed to subject the IOP to the

4   environmental review NEPA requires.  Because NEPA does not provide a private right of action,

5   the court's jurisdiction to hear NEPA claims arises under the APA.  *Friends of Roeding Park v.*

6   *City of Fresno*, 848 F. Supp. 2d 1152, 1160 (E.D. Cal. 2012) ("It is well-accepted that . . . NEPA .

7   . . do[es] not create [a] private right[] of action to enforce [its] provisions . . . . Plaintiff seeking

8   relief for violations of these statutes must rely upon other authority, such as the [APA].").  The

9   APA in turn includes "a series of procedural requirements litigants must fulfill before bringing

10  suit in federal court."  *San Carlos Apache Tribe v. United States*, 417 F.3d 1091, 1093 (9th Cir.

11  2005).

12         The APA authorizes suit by "[a] person suffering legal wrong because of agency action, or

13  adversely affected or aggrieved by agency action within the meaning of a relevant statute."

14  5 U.S.C. § 702.; *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61 (2004).  Where no other

15  statute provides a private right of action, the "agency action" complained of must be "final

16  agency action."  5 U.S.C. § 704; *Norton*, 542 U.S. at 62.  Agency action" is defined in 5 U.S.C.

17  § 551(13) to include "the whole or a part of an agency rule, order, license, sanction, relief, or the

18  equivalent or denial thereof, or failure to act."  An "agency action" falls under one of "five

19  categories of decisions made or outcomes implemented by an agency-'agency rule, order, license,

20  sanction [or] relief.'"  *Norton*, 542 U.S. at 62 (quoting 5 U.S.C. § 551(13)).  As the Supreme

21  Court explained in *Norton*:

22             All of those categories involve circumscribed, discrete agency
               actions, as their definitions make clear:
23
24             1. "[a rule is] an agency statement of . . . future effect designed to
               implement, interpret, or prescribe law or policy;

25             2. [an order is] a final disposition . . . in a matter other than rule
               making;
26
27             3. [a license is] a permit . . . or other form of permission;

28             4. [a sanction is] a prohibition . . . or taking [of] other compulsory
               or restrictive action; and

> 5. [a relief is] (a) a grant of money, assistance, license, authority, etc., or (b) recognition of a claim, right, immunity, etc ., or (c) a taking of other action on the application or petition of, and beneficial to, a person."

*Norton*, 542 U.S. at 62 (quoting 5 U.S.C. §§ 551(4), (6), (8), (10), (11)).

For an action to be "final agency action" under the APA, two conditions must be met:

> 1. The action must mark the 'consummation' of the agency's decision making process and must not be of a merely tentative or interlocutory nature, and
>
> 2. The action must be (a) "one by which rights or obligations have been determined," or (b) "from which legal consequences flow."

*Bennett v. Spear*, 520 U.S. 154, 178 (1997). Whether an action constitutes a final agency action is premised on the observation that the action has "no direct consequences" and serves "more like a tentative recommendation than a final binding determination." *Id*. In other words, if the agency action is purely advisory and in no way affects the legal rights of the relevant actors it is not a "final agency action" under the APA. *Id*. In the Ninth Circuit, the core question is whether the agency has completed its decision-making process and whether the result of that process is one that will directly affect the parties. *Oregon Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006). There are at least three circumstances in which an agency's action may be deemed final:

> 1. If the action "amounts to a definitive statement of the agency's position" or
>
> 2. If the action "has a direct and immediate effect on the day-to-day operations" of the subject party, or
>
> 3. If, based on the action, "immediate compliance with the terms is expected."

*Id*. A reviewing court should "focus on the practical and legal effects of the agency action" and should interpret the finality requirement "in a pragmatic and flexible manner." *Id*.

Here, nothing in the proposed amended answer or elsewhere in the record suggests that any Federal Defendant has taken any "final agency action" in connection with the IOP. Relevant to this issue of finality, SWC's proposed amended answer alleges as follows:

6

On September 27, 2021, counsel for Federal Defendants provided SWC with the IOP (the <u>proposed</u> "interim operations plan" for Water Year 2022). . . .

FWS and NMFS were involved in the <u>development</u> of the IOP. . . .

[An] October 1, 2021 Joint Status Report [filed] in PCFFA and CNRA . . . . stated that as part of the reconciliation process described in Federal Defendants' prior filings, Federal Defendants and the State Plaintiffs <u>developed</u> a plan of operations of the CVP and SWP through September 30, 2022. . . .

Federal Defendants' position statement in [an October 14, 2021] Joint Status Report stated Federal Defendants and State Plaintiffs agree that "<u>adoption of the [IOP] is necessary</u>," and that Federal Defendants <u>would file a motion to adopt</u> the IOP and to stay the litigation through September 30, 2022 in both cases. . . .

On November 4, 2021, Federal Defendants indicated in a Joint Status Report that they were considering making "targeted adjustments to the interim operations plan submitted on October 14, 2021," but <u>confirmed that they would seek the Court's approval of a specifically identified plan for interim operations on November 23, 2021</u>. (*Id.* at ¶ 73.)

(Doc. No. 311-2, ¶¶ 58, 60, 63, 66, 73 (emphasis added).)

These allegations confirm that whatever Federal Defendants have thus far done in connection with the IOP, that conduct likely does not amount to "agency action" at all, and certainly is not "final agency action." The IOP is a *proposed* management regime being presented to the court for the court's consideration. Nothing suggests that the IOP is "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act," 5 U.S.C. § 551(13)), as those terms are defined in the statute, *Norton*, 542 U.S. at 62 (quoting 5 U.S.C. §§ 551(4), (6), (8), (10), (11)).

Even assuming, *arguendo*, that the Federal Defendants' alleged conduct in connection with the IOP could be considered an "agency action," and further assuming that the IOP marks the "consummation" of that hypothetical agency action (thereby satisfying the first finality requirement set forth in *Bennett*), the second finality requirement—that the action must be "one by which rights or obligations have been determined," or "from which legal consequences

/////

/////

7

1   flow"— plainly is not alleged, nor could it be.[4]  To the contrary, SWC's proposed amended

2   answer confirms that the IOP is in the process of being presented to the court for *possible* judicial

3   approval as part of a motion for interim injunctive relief.  For these reasons, the first cross-claim

4   premised upon NEPA fails to allege final agency action as required by the APA and therefore

5   amendment to assert such a claim would be futile as presently formulated.

6          The same is true as to the second cross-claim.  That claim alleges that Federal Defendants

7   violated the APA and ESA § 7(a)(2) by "approv[ing]" the IOP without engaging in appropriate

8   consultation required under the ESA.  First, to the extent SWC is attempting to bring this claim

9   directly under the ESA's citizen suit provision, they have failed to provide the statutorily required

10  sixty-day notice to Federal Defendants.  16 U.S.C. § 1540(g)(2)(A)(i) ("No action may be

11  commenced [under the ESA's citizen suit provision] prior to sixty days after written notice of the

12  violation has been given to the Secretary, and to any alleged violator. . . ."); *Klamath-Siskiyou*

13  *Wildlands Ctr. v. MacWhorter*, 797 F.3d 645, 647 (9th Cir. 2015) ("A failure to strictly comply

14  with the notice requirement acts as an absolute bar to bringing suit under the ESA.").  To the

15  extent SWC is attempting to bring this claim under the APA, the final agency action requirement

16  again applies.  The second cross-claim relies on the same general allegations as the first and again

17  fails to articulate a final agency action.  Amendment to assert such a cross-claim would therefore

18  be futile as presently proposed.

19  /////

20

21  [4]  In *Oregon Natural Desert* the Ninth Circuit did articulate that a final agency action can exist
    where an action "amounts to a definitive statement of the agency's position."  465 F.3d at 982.
22  Superficially, it is possible to apply that language to the present circumstances insofar as Federal
    Defendants appear to have settled on a version of the IOP for presentation to the court thereby
23  taking a position in this litigation that the IOP is the best form of injunctive relief.  But that is not
24  the kind of situation that the court in *Oregon Natural Desert* had in mind.  There, the Forest
    Service argued that its issuance of Annual Operating Instructions ("AOIs") to grazing permit
25  holders was not an agency action or final for purposes of the APA.  *Id.*  The Ninth Circuit first
    held that an AOI was the equivalent of a license.  *Id.* at 982–83.  Then, more pertinent here, it
26  concluded that the issuance of the AOIs was a final agency action because "the initial agency
27  decisionmaker arrived at a definitive position and put the decision into effect."  *Id.* at 985
    (emphasis added).  The latter step—putting the decision into effect—is not alleged here.  SWC's
28  entirely conclusory assertion that Reclamation "approved" the IOP (see, e.g., Doc. No. 311-2,
    ¶ 87) is insufficient to satisfy that requirement.

8

The third cross-claim arguably requires some additional discussion.  That claim alleges that Federal Defendants violated the APA and the WIIN Act, by failing to abide by procedures set forth in WIIN Act § 4004.  In pertinent part, § 4004(a) provides:

> Federal agencies shall cooperate with State and local agencies to resolve water resource issues in concert with conservation of endangered species, in any consultation or reconsultation on the coordinated operations of the Central Valley Project and the State Water Project, the Secretaries of the Interior and Commerce shall ensure that any public water agency that contracts for the delivery of water from the Central Valley Project or the State Water Project that so requests shall—
>
> (1) have routine and continuing opportunities to discuss and submit information to the action agency for consideration during the development of any biological assessment;
>
> (2) be informed by the action agency of the schedule for preparation of a biological assessment;
>
> (3) be informed by the consulting agency, the U.S. Fish and Wildlife Service or the National Marine Fisheries Service, of the schedule for preparation of the biological opinion at such time as the biological assessment is submitted to the consulting agency by the action agency;
>
> (4) receive a copy of any draft biological opinion and have the opportunity to review that document and provide comment to the consulting agency through the action agency, which comments will be afforded due consideration during the consultation;
>
> (5) have the opportunity to confer with the action agency and applicant, if any, about reasonable and prudent alternatives prior to the action agency or applicant identifying one or more reasonable and prudent alternatives for consideration by the consulting agency; and
>
> (6) where the consulting agency suggests a reasonable and prudent alternative be informed—
>
>> (A) how each component of the alternative will contribute to avoiding jeopardy or adverse modification of critical habitat and the scientific data or information that supports each component of the alternative; and
>>
>> (B) why other proposed alternative actions that would have fewer adverse water supply and economic impacts are inadequate to avoid jeopardy or adverse modification of critical habitat

Pub. L. No. 114-322, § 4004 (2016).

/////

9

The plain language of § 4004 does apply to the present circumstances.  The procedural requirements set forth in § 4004(a)(1)–(6) apply only to the circumstances set forth in the opening paragraph, which is specifically limited to "any consultation or reconsultation on the coordinated operations of the Central Valley Project and the State Water Project."  While Federal Defendants have reinitiated consultation on the challenged biological opinions, that re-consultation process is just beginning.  The presentation of the IOP to this court is a separate (but related) litigation procedure meant to bridge the gap between the 2019 biological opinions and any revised biological opinions that may result from re-consultation.  In addition, the absence of finality discussed above arguably dooms SWC's proposed WIIN Act cross-claim as well.  Just like NEPA, the WIIN Act does not contain a citizen suit provision, and therefore any claims brought thereunder are subject to the APA's threshold requirements.  Without a final agency action, any violations of the procedural requirements set forth in § 4004 are not actionable or justiciable.

Having found amendment to assert each one of the proposed cross-claims to be obviously futile, the court will deny SWC's motions to amend its answers without prejudice to renewal of its motion to amend should circumstances change in the future.

The court pauses briefly to note that SWC's motion to amend appears to have been filed at least in part to obliquely address other, related matters.  SWC and other defendant intervenors have elsewhere questioned whether the court may approve a set of interim injunctive relief measures such as those proposed in the IOP where the proposing agency has not subjected those measures to normal environmental review and/or administrative process.  (*See* Doc. No. 26 at 9, 15 (citing *Conservation Nw. v. Sherman*, 715 F.3d 1181, 1185 (9th Cir. 2013) ("[A] district court may not approve a consent decree that 'conflicts with or violates' an applicable statute[.]").)  Although the court has not examined this potential issue in detail at this stage of the litigation, it is far from clear that this suggested line of reasoning can, in fact, swim.  *See Turtle Island Restoration Network v. U.S. Dep't of Commerce*, 672 F.3d 1160, 1167 (9th Cir. 2012) (approving a consent decree despite noncompliance with statutory rulemaking procedural requirements because the decree "merely temporarily restore[d] the *status quo ante* pending new agency action and [did] not promulgate a new substantive rule."); *see also Nat'l Tr. for Historic Pres. v. Suazo*,

No. CV-13-01973-PHX-DGC, 2015 WL 3613850, at *4 (D. Ariz. June 9, 2015) (holding that while certain statutes may limit an agency's authority to amend or issue a plan "they do not preclude the Court from enjoining activities").

SWC seems particularly concerned about two things.  First, SWC has apparently received some indication that Federal Defendants will object to SWC raising an argument based on *Sherman* in the absence of a pleading setting forth underlying statutory violations.  The possibility of such an objection has no bearing on the court's analysis of the futility of the proposed amendment.[5]  Second, SWC notes, correctly, that it is currently subject to a combined page limit alongside the other defendant-intervenors.  (*See* Doc. Nos. 311-1 at 11, 315.)  To the extent SWC was attempting to use cross-claims as an end-run around the court's page limits, this again has no bearing on the court's futility analysis.  Put simply, a motion to amend an answer that proposes to add futile claims is not an appropriate (or effective) mechanism to address a parties' concerns about briefing page limitations imposed by the court.  If the parties wish to present an appropriate stipulation to the court on this issue, a modest expansion of the page limits will be entertained to permit the filing of appropriate briefing addressing the court's equitable authority.  If no agreement can be reached, the court will entertain a concise petition for expanded page limits.  The parties are forewarned, however, that the court does not—at least at this point—believe it is necessary for SWC to exhaustively brief the merits of its arguments as to why or in what way the Federal Defendants' have violated NEPA, the ESA, or the WIIN Act by proposing the IOP to the court for approval.

## CONCLUSION AND ORDER

For the reasons set forth above, the pending motions for leave to amend (*PCFFA*, Doc. No. 311; *CNRA*, Doc. No. 215) are DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED.

Dated:   **December 7, 2021**

_____
UNITED STATES DISTRICT JUDGE

---

[5]  The court does note that the concept of judicial estoppel may prevent the Federal Defendants from advancing certain objections.

11