1   ROB BONTA, State Bar No. 202668
    Attorney General of California
2   TRACY L. WINSOR, State Bar No. 186164
    Supervising Deputy Attorney General
3   COLLEEN R. FLANNERY, State Bar No. 297957
    DANIEL M. FUCHS, State Bar No. 179033
4   SARA D. VAN LOH, State Bar No. 264704
    Deputy Attorneys General
5     1300 I Street, Suite 125
      P.O. Box 944255
6   Sacramento, CA 94244-2550
    Telephone: (916) 210-7827
7   Fax: (916) 327-2319
    E-mail: Daniel.Fuchs@doj.ca.gov
8   *Attorneys for Plaintiffs*
    *California Natural Resources Agency,*
9   *California Environmental Protection Agency, and*
    *People of the State of California, ex rel. California*
10  *Attorney General Rob Bonta*

11

12                    IN THE UNITED STATES DISTRICT COURT

13                    FOR THE EASTERN DISTRICT OF CALIFORNIA

14

15

16  **THE CALIFORNIA NATURAL**          Case No. 1:20-cv-00426-DAD-EPG
    **RESOURCES AGENCY, ET AL.**
17                                      **PLAINTIFFS' RESPONSES TO**
                            Plaintiffs,  **DEFENDANT-INTERVENORS'**
18                                      **OBJECTIONS TO EVIDENCE; AND**
            v.                          **OBJECTIONS TO DEFENDANT-**
19                                      **INTERVENORS' EVIDENCE**

20  **GINA RAIMONDO, ET AL.,**          Date:        February 1, 2022
                                        Time:        9:30 a.m.
21                          Defendants.  Dept:        5
                                        Judge:       The Honorable Dale A. Drozd
22                                      Trial Date:  TBD
                                        Action Filed: February 20, 2020

23

24

25

26

27

28

**CALIFORNIA'S RESPONSES TO INTERVENORS' OBJECTIONS TO EVIDENCE**

Intervenors object to portions of the declarations of experts Les Grober and Bruce Herbold submitted in support of Plaintiffs' Motion for Interim Injunctive Relief on the grounds that these witnesses' specific expertise does not extend to every topic mentioned in their declarations. For example, Intervenors object to the portions of Mr. Grober's declaration that discuss the interplay between hydrologic flows and water temperature in the context of ensuring adequate water temperatures to sustain salmonid fisheries; the basis for this objection is that Mr. Grober is a hydrologist, not a fisheries biologist. ECF 234 at 3:5-4:9. Similarly, Intervenors object to two paragraphs of Dr. Herbold's declaration discussing the effect of water storage decisions for Lake Shasta on Winter-run salmon spawning on the grounds that Dr. Herbold is an ecologist and fish biologist, not "a Central Valley Project/State Water Project (CVP/SWP) operations expert." ECF 234 at 5:26–6:10.

These objections should be overruled. Intervenors do not dispute that Mr. Grober and Dr. Herbold are qualified as experts in their identified fields. Moreover, under Rule 702, "an expert maybe qualified either by 'knowledge, skill, experience, training, or education,'" and the rule "is broadly phrased and intended to embrace more than a narrow definition of qualified expert." *Thomas v. Newton Int'l Enterprises*, 42 F.3d 1266, 1269 (9th Cir. 1994). In *People v. Kinder Morgan Energy Partners, L.P.*, 159 F. Supp. 3d 1182 (S.D. Cal. 2016), for example, the court overruled an objection similar to the ones asserted here, made on the grounds that the witness' expertise was not sufficiently specific:

> Kinder Morgan argues as a threshold matter that Dr. Waters is not qualified to provide an expert opinion on the method of valuing the supply and storage of water because he has never before done so. . . . Dr. Waters is clearly qualified as an economist. He has provided market analyses in a wide variety of industries, and he does not need to be a water supply or storage expert in order to provide a reasoned opinion on the operation of the applicable market.

*Id*. at 1190.

Courts also recognize that an expert's specific field of expertise may overlap with other disciplines, which does not preclude the expert from offering relevant testimony. The court in *Pooshs v. Phillip Morris USA, Inc.*, 287 F.R.D. 543 (N.D. Cal. 2012) found that "despite not

1

Pls' Resp. to Def-Intervenors' Objs. to Evid; and Objs. to Def-Intervenors' Evid. (1:20-cv-00426-DAD-EPG)

having a marketing degree," a public health expert was "qualified, by education, experience, and training, to opine regarding advertising and marketing in the area of public health." *Id.* at 553. The witness could "be designated as an expert in this limited area without also being an expert in the total universe of commercial marketing and advertising." *Id.* Similarly here, Mr. Grober and Dr. Herbold may apply their knowledge, experience, and expertise in offering opinions relevant to issues in this case without "also being [experts] in the total universe" of disciplines those opinions touch on.

Finally, as Intervenors implicitly acknowledge by asking this Court to "disregard or accord little or no weight" to the challenged evidence (ECF 234 at 2:17–17), objections that otherwise qualified experts lack sufficient specialized knowledge is not a basis to exclude their testimony: "Whether an expert is the 'best' qualified or has sufficient specialized knowledge is generally a matter of weight, not admissibility." *LaCava v. Merced Irr. Dist.,* No. 1:10-CV-00853 LJO, 2012 WL 913697, at *5 (E.D. Cal. Mar. 16, 2012). Plaintiffs request that the Court overrule the objections, addressed specifically below.

| MATERIAL OBJECTED TO | GROUNDS FOR OBJECTION | PLAINTIFFS' RESPONSE |
|---|---|---|
| Grober Decl. ¶¶ 30, 32-35, 37, 43-51, 54, 57-58, 61-64, 70-73, 75, 77, 79. | Fed. R. Evid. (FRE) 701, 702.<br><br>As Mr. Grober declares, he is a hydrologist. ("A hydrologist is a scientist who specializes in the technical side of water management, including engineering, atmospheric, environmental, and geologic aspects." Grober Decl. ¶ 1.)<br><br>Mr. Grober is not a fisheries biologist and neither his declaration nor curriculum vitae provide a basis for him to testify as an expert on fisheries biology. Grober Decl., Ex. A. In fact, during his January 5, 2022 deposition, Mr. Grober testified that he does not consider himself an expert in fishery biology,[1] he did not consider any documents in developing his opinions about survival of winter-run | Mr. Grober's expertise as a hydrologist is multi-faceted, as Defendant-Intervenors acknowledge. Accordingly, it includes the effects of water management on environmental components, such as water temperature profiles necessary to sustain fisheries. The well-known fact that sufficiently low water temperatures in the |

[1] Q: You don't consider yourself an expert in fishery biology, do you, Mr. Grober?
A: No. (Grober Trans. at 145:8-10.)

2

Pls' Resp. to Def-Intervenors' Objs. to Evid; and Objs. to Def-Intervenors' Evid. (1:20-cv-00426-DAD-EPG)

| | | | |
|---|---|---|---|
| | | Chinook salmon, and he did not speak to any fisheries biologists in developing his opinions. Declaration of Samuel Bivins ¶ 4, Ex. C, Transcript of Deposition of Les Grober (Grober Trans.) at 145:8-9, 147:10-25.<br>Furthermore, at the outset of his declaration, he states that he will "discuss and provide opinions on the following topics: Severity of the Current Drought; Shasta Reservoir and Sacramento River Operations; Sacramento River Temperature Requirements; Uncertainty of Future Hydrology; Carryover Storage, Timing of Deliveries, Alternative Water Supplies, and Water Rights." Grober Decl. ¶ 10, notably not including any references to ecological issues, fish/species, or harm/protection of the same.<br><br>However, the "summary of [Mr. Grober's] opinions" at the conclusion of his declaration specifically opine on fisheries biology issues in nearly every bulleted opinion. Grober Decl. ¶ 79. In fact, throughout his declaration, Mr. Grober mentions "Chinook" 49 times, "salmon" 54 times, "species" 12 times, "fish" 33 times, "effect/s" to the Same 15 times, "harm" to the same 32 times, "protect/protection" of the same 36 times, and even mortality 4 times.<br><br>Mr. Grober's fisheries biology opinions throughout his declaration, as summarized at paragraph 79, are far beyond the scope of the opinions that he set out to discuss at paragraph 10 and, specifically, far beyond the scope of the "scientific, technical, or other specialized knowledge" (i.e., as a "hydrologist") on which his opinions are based. Therefore, these objections should be sustained and the fisheries biology opinions disregarded. | Sacramento River are necessary to sustain certain fish populations is the basis of numerous regulatory requirements (Grober Decl. ¶ 20), including provisions of the 2019 Biological Opinions at issue in this case. The opinions in the challenged portions of Mr. Grober's declaration address the interplay between water releases and water temperature, and the probable effects of failure to meet certain temperature requirements on fish. Mr. Grober is qualified by education, experience, and training to opine regarding hydrologic temperature management in the area of fisheries – he may "be designated as an expert in this limited area without also being an expert in the total universe" of fisheries biology. *Pooshs v. Phillip Morris USA, Inc.,* 287 F.R.D. 543, 553 (N.D. Cal. 2012). |
| | Grober Decl. ¶¶ 18, 21, 32-39, 41-65, 70-79. | FRE 701, 702.<br><br>Neither his declaration nor his *curriculum vitae* provide a basis for Mr. Grober to testify as an expert on Central Valley Project (CVP) operations or Sacramento | Mr. Grober's expertise as a hydrologist specifically includes the "technical side of water management, including engineering, |

3

| | | |
|---|---|---|
| | River temperature management. Grober Decl., Ex. A. He is a hydrologist. Grober Decl. ¶ 1.<br><br>During his deposition, Mr. Grober testified that "[he] know[s] a lot more than many other people [about CVP operations] but not as much as the people that are the real principal experts." Grober Trans. at 148:5-15. In other testimonial words, "frankly [Mr. Grober] do[es]n't know what [he] do[es]n't know." Grober Trans. at 28:10-17. And knowing "more than many" does not satisfy FRE 702's requirement for "scientific, technical, or other specialized knowledge." Thus, Mr. Grober is not a "real" expert on CVP operations. Regarding Sacramento River temperature management, Mr. Grober specifically admits that he is not an expert.[2] Grober Trans. at 149:18-25.<br><br>Nevertheless, Mr. Grober provides extensive expert opinions on CVP operations and Sacramento River temperature management. He mentions "temperature" management/ control/requirements/benefits/planning/ profiles/limits/targets/goals 121 times. Mr. Grober's CVP operations and Sacramento River temperature management opinions require "scientific, technical, or other specialized knowledge" that he, himself, admits that he does not have. Therefore, these objections should be sustained and the opinions disregarded. | atmospheric, environmental, and geologic aspects." Grober Decl. ¶ 1. Further, Mr. Grober's qualifications include over a decade of experience relating directly to CVP operations: "During my time at the State Water Board, I was responsible for the modeling and review of modeling to assess the effects of changes in hydrology, and Central Valley Project (CVP) and State Water Project (SWP) collectively, Projects) operations, on Delta water flow and water quality. I am familiar with Bay-Delta hydrology issues and have worked with modeling staff at the Department of Water Resources and United States Bureau of Reclamation regarding Delta hydrology and water quality." Grober Decl. ¶ 4.<br><br>Mr. Grober's modest self-assessment during his deposition, acknowledging that there may be others with greater knowledge |

[2] Q: Do you consider yourself an expert on water temp tower [sic] management in the Sacramento river?
A: No that's easy I mean because I think there's – there's – no. There's a lot of people that know a lot about that and I know enough about the connected necessary of things so I know elements of it. (Grober Trans. at 149:18-25.)

4

| | | |
|---|---|---|
| | | about CVP operations, in no way undermines his own qualifications. Mr. Grober is "clearly qualified" as a hydrologist, and he has ample experience and knowledge specifically regarding the CVP; "he does not need to be a [CVP operations expert] in order to provide a reasoned opinion on the operation of the applicable [project]." *People v. Kinder Morgan Energy Partners, L.P.*, 159 F. Supp. 3d 1182, 1190 (S.D. Cal. 2016). |
| Grober Decl. ¶¶ 40, 77-78. | FRE 701, 702.<br><br>Neither his declaration nor his *curriculum vitae* provide a basis for Mr. Grober to testify as an expert on agricultural matters. Grober Decl., Ex. A. He is a hydrologist. Grober Decl. ¶ 1.<br><br>During his January 5, 2022 deposition, Mr. Grober testified that, along with his "common sense," Figure 6 is the only document he considered in reaching his rice planting opinions. Grober Trans. at 116:8-118:24. He also did not speak to any rice farmers before reaching his opinions on rice farming. Grober Trans. at 118:25-119:9. When asked how Sacramento Valley rice farmers determine the level of expected water deliveries, he testified that "[he] do[es] not know how they determine how much water they're going to be getting in any given year." Grober Trans. at 119:17-120:7. Notably, counsel for Plaintiffs | Mr. Grober's limited testimony about the timing of water deliveries for agriculture and potential water transfers and groundwater pumping as alternatives for agricultural water supply is well within his expertise as a hydrologist. Mr. Grober clearly explained the basis for his opinions regarding the timing of water supply (Grober Decl. ¶ 40), and generally explained that water transfers and groundwater pumping are two options available to reduce any |

5

Pls' Resp. to Def-Intervenors' Objs. to Evid; and Objs. to Def-Intervenors' Evid. (1:20-cv-00426-DAD-EPG)

| | | |
|---|---|---|
| | objected to this question on the basis that it calls for speculation from Mr. Grober.<br><br>Nevertheless, Mr. Grober provides expert opinions on agricultural, agribusiness, and agronomy decisionmaking, purchases, and scheduling (e.g., decisions and timing related to crop planting, water transfer agreements, and reliance on groundwater pumping).<br><br>Mr. Grober's expert agricultural opinions require "scientific, technical, or other specialized knowledge" – not "common sense" from a hydrologist. Therefore, these objections should be sustained and the opinions disregarded. | economic impacts of the IOP on agricultural water users. Mr. Grober is qualified to offer this limited testimony regarding the IOP's interplay between hydrology and agriculture "without being an expert in the total universe" of agricultural matters. *Pooshs v. Phillip Morris USA, Inc.,* 287 F.R.D. 543, 553 (N.D. Cal. 2012). |
| Herbold Decl. ¶¶ 8, 35. | FRE 701, 702.<br><br>As Dr. Herbold declares, he is an ecologist. "I am a private consultant in estuarine ecology with more than 40 years of experience in ecology of fish . . . ." Herbold Decl. ¶ 1.<br>Dr. Herbold is not a Central Valley Project/ State Water Project (CVP/SWP) operations expert.<br><br>Nevertheless, Dr. Herbold provides expert opinions on CVP/SWP operations (i.e., opining on causation related to carryover storage and winter 2020 planning).<br>Dr. Herbold's operations opinions are beyond the scope of the "scientific, technical, or other specialized knowledge" (i.e., as an "ecologist") on which his opinions are based. Therefore, these objections should be sustained and the opinions disregarded. | The challenged paragraphs discuss the effects of certain water management actions on salmon and smelt in California, which is well within Dr. Herbold's expertise as a fish ecologist focused on the Sacramento-San Joaquin Bay-Delta Estuary. Herbold Decl. ¶ 1. Defendant-Intervenors do not dispute that Dr. Herbold is qualified as an ecologist. He may testify about the effects of CVP/SWP operations on fish "without being an expert in the total universe" of CVP/SWP operations. *Pooshs v. Phillip Morris USA, Inc.,* 287 F.R.D. 543, 553 (N.D. Cal. 2012). |

6

**CALIFORNIA PLAINTIFFS' OBJECTIONS TO DEFENDANT-INTERVENORS'
EVIDENCE[3]**

| MATERIAL OBJECTED TO | GROUNDS FOR OBJECTION | RULING ON OBJECTION |
|---|---|---|
| Cavallo Decl. ¶¶ 10, 12, 13 | Fed. R. Evid. 702.<br><br>Mr. Cavallo states, "In the summer of 2021, I and two of my colleagues surveyed three separate spawning riffles on the Sacramento River at Redding. We collected data on the characteristics of the spawning riffles and found them to be free of excessive fine sediment and with gravels within the acceptable size range for Chinook salmon spawning."<br><br>Mr. Cavallo contends that his survey demonstrates that the quality of the Sacramento River is better for salmon than the published, peer-reviewed literature suggests.<br><br>From this survey, Mr. Cavallo concludes, "[O]ur measurements of Sacramento River hydraulic conductivity almost certainly underestimated the quality of conditions experienced by winter-run Chinook salmon."<br><br>"The data we collected on the Sacramento River this year, along with evidence from other comparable Central Valley Rivers . . . suggest conditions hypothesized by the Martin papers are not likely to occur for winter-run in the Sacramento River."<br><br>No data have been distributed, and none of this analysis has been peer-reviewed. Mr. Cavallo fails to establish that his survey and related conclusions are based on sufficient facts and data and are the product of reliable principles and methods that were appropriately applied. | ☐    Sustained<br>☐    Overruled |

---

[3] In addition to the objections below, California requests that the Court disregard the declaration of Charles Hanson, *PCFFA* ECF 358, which was not filed in the *CNRA* case and does not purport to address the injunction sought by California.

7

| Cavallo Decl. ¶ 14 | Fed. R. Evid. 702.<br><br>Mr. Cavallo suggests that old data from the Feather and American Rivers provides useful information for the dissolved oxygen content in the Sacramento River.<br><br>"Data collected from other large Central Valley rivers hosting Chinook salmon spawning also suggests dissolved oxygen is not generally limiting. DWR conducted extensive studies of intergravel flow and dissolved oxygen in spawning gravels of the Feather River (CDWR 2004). They observed mean dissolved oxygen concentrations between 8.5 and 11 mg/L (Table 5.1-6). Similar studies were conducted in Chinook salmon spawning gravels of the American River."<br><br>Mr. Cavallo does not provide a basis for applying these data to winter-run Chinook salmon in the Sacramento River., and admits that conditions in the Feather and American Rivers are not the same as in the Sacramento River. Herbold Decl. ¶ 51; Flannery Decl., Exh. 2, 145:3–146:19. | ☐ Sustained<br>☐ Overruled |
| --- | --- | --- |
| Cavallo Decl. ¶ 31 (Table 2) | Fed. R. Evid. 702.<br><br>By using percentages as data and using single numbers rather than two sets of data, Mr. Cavallo violates standard guidance on how to use his statistic. Herbold Decl. ¶ 17. As one example, the two very small numbers, the smallest overall in fact, have a difference that is very small, but a % deviation that is very large, because the 2.4% "difference" between 5% and 2.6% is a misleadingly large 90% of that tiny 2.6% actual difference. *Id.* | ☐ Sustained<br>☐ Overruled |
| Cavallo Decl. ¶¶ 33, 35 | Fed. R. Evid. 702.<br><br>Cavallo admits at paragraph 6 that thiamine effects are "uncertain," but by paragraph 35, calls thiamine deficiency "the primary culprit" for the low egg-to-fry survival. He provides no known scientific basis for the following conclusion:<br><br>"The effects of thiamine deficiency on egg or early fry survival have not been studied | ☐ Sustained<br>☐ Overruled |

8

| | | |
|---|---|---|
| | for naturally spawning winter-run Chinook salmon, but these effects are expected to be more severe than adverse effects observed in the hatchery or laboratory settings." | |
| Cavallo Decl. Fig. 4 | Fed. R. Evid. 702.<br><br>No underlying data or analysis are provided, and Mr. Cavallo himself admits in the caption of this figure that he "cherry-picked" data by omitting certain years in which temperature-dependent mortality and flows would have affected the outcome. Mr. Cavallo fails to establish that this figure is based on sufficient facts and data and is the product of reliable principles and methods that were appropriately applied. Herbold Decl, ¶ 15. | ☐ Sustained<br>☐ Overruled |
| Cavallo Decl. ¶ 37 | Fed. R. Evid. 702.<br><br>Mr. Cavallo asserts conclusions dramatically overestimating passage of winter-run fry. These conclusions are entirely unsupported by reliable data or methods and are not peer reviewed. The adjustments to fish passage are already accounted for in the JPE letter using standard scientific methods. Herbold Decl., Exh. A, p. 6. | ☐ Sustained<br>☐ Overruled |
| Cavallo Decl. ¶ 61 | Fed. R. Evid. 702.<br><br>Mr. Cavallo reports unreviewed results of running a revised Martin model:<br><br>"As detailed in Exhibit D, we requested and eventually received the analytical code NMFS indicated they have relied upon (and continue to rely on) to estimate TDM. In addition to the foundational problems of the Martin model described previously, we used the code to develop appropriate confidence intervals for TDM, and while doing so identified serious problems that have not previously been disclosed or considered."<br><br>Unlike the Martin model itself, these results have not been published or peer reviewed and should not be considered. Herbold, ¶ 54. Moreover, Exhibit D shows that NMFS | ☐ Sustained<br>☐ Overruled |

|  | has addressed the underlying issues with the model. Cavallo Decl. Ex. D at 3. Mr. Cavallo's document production shows the same. Flannery Decl. Ex. 4 at CAVALLO_002143-CAVALLO_002148. |  |
|---|---|---|

Dated: January 24, 2022

Respectfully submitted,

ROB BONTA
Attorney General of California
TRACY L. WINSOR
Supervising Deputy Attorney General

/S/ Daniel M. Fuchs
DANIEL M. FUCHS
Deputy Attorney General
*Attorneys for Plaintiffs California Natural Resources Agency, California Environmental Protection Agency, and People of the State of California, ex rel. California Attorney General Rob Bonta*

SA2019300725
35847617.docx