TODD KIM, Assistant Attorney General
S. JAY GOVINDAN, Acting Section Chief
U.S. Department of Justice
Environment & Natural Resources Division
NICOLE M. SMITH, Senior Trial Attorney (CA Bar No. 303629)
CLIFFORD E. STEVENS, JR., Senior Trial Attorney (DC Bar No. 463906)
150 M St. NE, Washington, D.C. 20002
Tel: (202) 305-0368 (Smith); Tel: (202) 353-7548 (Stevens)
LESLEY LAWRENCE-HAMMER, Senior Trial Attorney (DC Bar No. 982196)
EVE W. MCDONALD, Trial Attorney (CO Bar No. 26304)
999 18th Street, South Terrace – Suite 370, Denver, CO 80202
Tel: (303) 844-1368 (Lawrence-Hammer); Tel: (303) 844-1381 (McDonald)
*Attorneys for Federal Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS, et al., <br> Plaintiffs, <br> v. <br> GINA RAIMONDO, in her official capacity as Secretary of Commerce, et al., <br> Defendants. <br> ──────────────────────── <br> THE CALIFORNIA NATURAL RESOURCES AGENCY, et al., <br> Plaintiffs, <br> v. <br> GINA RAIMONDO, et al., <br> Defendants. | Case No. 1:20-cv-00431-JLT-EPG <br> Case No. 1:20-cv-00426-JLT-EPG <br><br> **ORDER RE INTERIM OPERATIONS PLAN** |

Case Nos. 1:20-cv-00431-JLT-EPG; 1:20-cv-00426-JLT-EPG

Upon Consideration of Federal Defendants' and State Plaintiffs' September 2022 Joint Status Report, and finding good cause shown, the Court orders:

1. Per this Court's March 11, 2022 and March 14, 2022 Orders in these cases, the Biological Opinion on Long-term Operation of the Central Valley Project (CVP) and the State Water Project (SWP) issued by the National Marine Fisheries Service (NMFS) on October 21, 2019; the Biological Opinion for the Reinitiation of Consultation on the Coordinated Operations of the CVP and SWP issued by the U.S. Fish and Wildlife Service (FWS) on October 21, 2019 (collectively, the "2019 Biological Opinions"); and the 2020 Record of Decision on Reinitiation of Consultation on the Coordinated Long-Term Modified Operations of the CVP and SWP issued by the United States Bureau of Reclamation (Reclamation) on February 18, 2020 (2020 ROD) were remanded to their respective federal agencies without vacatur. That remand is ongoing.

2. The above captioned cases and all deadlines currently set in them are stayed through December 31, 2023.

3. From the date of this Order through December 31, 2023, SWP and CVP operations shall comply, as consistent with applicable law, with the interim operations set forth below in Paragraphs 6 through 9 and 17 for all water year types.

4. From the date of this Order through December 31, 2023, SWP and CVP operations shall also comply, as consistent with applicable law, with the interim operations set forth below in Paragraphs 10 through 16, as applicable to water year type, should the water year type be classified as Critical, Dry, or Below Normal for Water Year 2023.

5. The coordinated operations of the CVP and SWP not governed by Paragraphs 6 through 17 will continue to be governed by the 2019 Biological Opinions, 2020 ROD, the California Department of Water Resources (DWR) 2020 ITP for DWR's operations of the SWP (DWR's ITP), and any other applicable statutory or regulatory requirements.

6. Through December 31, 2023, Reclamation shall adopt the following provisions of DWR's ITP (Where language states Permittee shall be Reclamation and DWR):

    i. 8.5.2 <u>Larval and Juvenile Delta Smelt Protection</u>

1

        ii. 8.6.1 <u>Winter-run Single-year Loss Threshold</u>

        iii. 8.6.2 <u>Early-season Natural Winter-run Chinook Salmon Discrete Daily Loss Threshold</u>

        iv. 8.6.3 <u>Mid- and Late-season Natural Winter-run Chinook Salmon Daily Loss Threshold</u>

        v. 8.6.4 <u>Daily Spring-run Chinook Salmon Hatchery Surrogate Loss Threshold</u>

        vi. <u>8.7 OMR Flexibility During Delta Excess Conditions</u>

        vii. 8.8 <u>End of OMR Management</u>

7. The following additions will apply to the OMR Flexibility During Delta Excess Condition (ITP Cond. Of Approval 8.7) action described in Paragraph 6(vi) above of DWR's ITP:

    i. Any storm flexibility during the March-June period will be operated consistent with the Incidental Take Statement in the 2019 FWS Biological Opinion requiring OMR flows be no more negative than -5000cfs on a 14-day moving average.

    ii. DWR will provide NMFS and FWS an analysis of how the action provides similar or better protection as compared to the 2019 Biological Opinions.

    iii. Through December 31, 2023, DWR will provide information on how use of OMR flexibility will help replenish storage South of Delta that was depleted in the 2020-2022 water years.

    iv. DWR will only implement OMR flexibility with approval of the Regional Director of FWS and Regional Administrator of NMFS. Factors considered in the decision shall include habitat conditions, potential effects, and seasonal incidental take levels for species covered under the 2019 Biological Opinions.

8. Water Operations Management Team (WOMT) Process (ITP Cond. Of Approval 8.1.4): The State Water Resources Control Board (SWRCB) will be a member of WOMT, and the SWRCB Executive Director will be included in Director level discussions.

9. Collaborative Approach to Real-Time Risk Assessment (ITP Cond. Of Approval 8.1.4): The Smelt and Salmon Monitoring Teams shall communicate their advice to WOMT. WOMT shall

deliberate to seek agreement on project operations. If WOMT cannot reach consensus on an operational issue, the issue will be elevated to the Directors. If a resolution is reached by the Directors, Reclamation shall operate consistent with the decision regarding Project operations from the Directors. If the Directors do not reach a resolution on operations, either the Regional Director of FWS or Regional Administrator of NMFS, whichever agency has ESA jurisdiction over the species, will make an operational decision for protection of listed species after conferring with the Director of the California Department of Fish and Wildlife (CDFW). Reclamation will implement the operational decision.

10. Summer-Fall Action Plan (ITP Cond. Of Approval 9.1.3.1): DWR will implement ITP Cond. Of Approval 9.1.3.1 and, in coordination with DWR and consistent with the summer-fall habitat action plan, Reclamation will share the water costs for DWR to operate the Suisun Marsh Salinity Control Gates in Below Normal years for a maximum of 60 days to maximize the number of days that Belden's Landing three-day average salinity is equal to or less than 4 ppt salinity.

11. Export Curtailments for Spring Outflow (ITP Cond. Of Approval 8.17): DWR will implement ITP Cond. Of Approval 8.17 and Reclamation shall reduce exports in the event Water Year 2023 is classified, based on the San Joaquin Valley 60-20-20 index, as Critical, Dry, or Below Normal to ensure a volumetric reduction consistent with DWR's implementation. Importantly, Cond. Of Approval 8.17 includes an exception procedure for multi-year droughts that could allow adjustments. Nothing herein shall require Reclamation and DWR to reduce exports to less than minimum health and safety.

12. Shasta operations

    i. Operational Priorities through December 31, 2023: The 2020-2022 water years have been an extremely dry period in the historical record. Shasta, Oroville and Trinity have significantly low storage going into Water Year 2023. Shasta Reservoir started Water Year 2022's temperature management period (May-September) at the second lowest level in history with a storage level of 1.81 million acre feet (MAF). In 2022, State and Federal agencies agreed to temperature management operations intended to maximize

limited spawning and egg incubation habitat for winter-run Chinook salmon, maintain sufficient temperatures to support winter-run Chinook salmon survival and growth at Livingston Stone National Fish Hatchery and other measures to limit risk to the population of winter-run Chinook salmon from a third year of low survival. Additionally, a Thiamine deficiency is expected to further compromise winter-run Chinook salmon egg-to-fry survival. The State has taken and will take actions regarding drought, including emergency drought proclamations and orders of the SWRCB. In recognition of this, and in consideration of end of year carryover storage goals pursuant to 16(i) below, DWR will coordinate with Reclamation on operations of the system, and Reclamation will operate Shasta Reservoir commencing in February 2023 to meet the following priorities in the order described below. These priorities will only apply in Critical or Dry years, as determined by the most current water year type projection, and subject to the decision process in Paragraph 17.

    a. Public Health and Safety: Defined as meeting Municipal and Industrial Delta salinity requirements and minimum Municipal and Industrial deliveries for Public Health and Safety.

    b. Habitat Criteria: Winter-Run Chinook Salmon habitat criteria (as described in Paragraph 15 below). Reclamation will not schedule nor make deliveries of stored water from Shasta for any reason other than specified in Paragraph 12(i)(a) above until Reclamation receives approval of a temperature management plan from NMFS that shows Reclamation will meet winter-run Chinook salmon habitat criteria and end of September carryover storage per Paragraph 16(i). NMFS will approve the temperature management plan, pursuant to Paragraph 17. If Reclamation is unable to meet habitat criteria for the entire period as described in Paragraph 15(i) for Critical, Dry, or Below Normal years, then a six-agency Shasta Planning Group, consisting of Reclamation, DWR, FWS, NMFS, CDFW and SWRCB, will agree on temperature management that provides sufficient habitat for the longest period

4

possible. Factors to be considered in the temperature management plan shall include available cold water in Shasta Reservoir, forecasted hydrologic and meteorological conditions, estimated winter-run Chinook salmon adult escapement, and strategies to protect winter-run Chinook salmon egg incubation to maximize balance of juvenile production and life-history diversity. In such a situation, the agencies will also coordinate with the "Meet and Confer Group" described in the 2019 NMFS Biological Opinion and brief *PCFFA* plaintiffs and defendant intervenors.

    c. Deliveries of stored water to senior water contractors and Central Valley Project Improvement Act (CVPIA) level 2 refuge supplies after ensuring any such deliveries are consistent with Paragraphs 12(i)(b) and 16(i).

    d. Other deliveries after ensuring any such deliveries are consistent with Paragraphs 12(i)(b), 12(i)(c), and 16(i).

13. The Shasta Planning Group will meet monthly beginning in November 2022, and biweekly or more frequently beginning in January 2023 (see Paragraph 17(ii) below). Further, starting February 1, 2023, Reclamation will confirm with the Shasta Planning Group on a weekly basis that the multiple priorities identified in this interim operations plan through December 31, 2023, can be satisfied in the order described above based on the latest forecast and hydrology, and will adjust releases accordingly. Reclamation may make releases to meet Public Health and Safety pursuant to Paragraph 12(i) year-round, and it may make other releases for deliveries as early as April 1, 2023, provided that they are consistent with the terms of this interim operations plan through December 31, 2023. The Shasta Planning Group will also coordinate with the "Meet and Confer Group" described in the 2019 NMFS Biological Opinion consisting of the Sacramento River Settlement Contractors, Reclamation, and NMFS. Additionally, the six agencies will utilize the Shasta Planning Group to discuss any potential effects of the operations described in Paragraph 12 on other CVP/SWP streams.

14. To the extent there is a drought proclamation in effect in Water Year 2023, the Federal Defendants and State Plaintiffs anticipate the SWRCB will use its emergency authorities as

5

appropriate to address dry conditions including protecting Reclamation's previously stored water releases and implementing water curtailments in a timely manner. FWS, NMFS, CDFW, and Reclamation will use their authorities to support the operational priorities and species needs.

15. Winter-Run Chinook Salmon Habitat:
    i. Reclamation will meet the following daily average temperatures at the Clear Creek Gauge from May 15 to October 31 by year type
        a. 55°F in Critical Year
        b. 54°F in Dry and Below Normal Year

16. End of September Shasta Storage for September 2023 in Critical, Dry, or Below Normal water years:
    i. Reclamation will determine final carryover storage volume planning goals by May 1, 2023, subject to Water Year 2023 hydrologic conditions, which may be amended by May 20, 2023 hydrology. This final goal will be developed pursuant to the decision process in Paragraph 17. NMFS may approve a draft temperature management plan as soon as April 1, 2023, provided that the plan includes carryover storage volumes and temperature targets, consistent with Paragraphs 12 through 17.
    ii. The following potential End of September Shasta carryover storage goals have been identified to inform the development of a final target as described in Paragraph 16(i), above, recognizing these goals may not be achievable:
        a. 1.2 MAF to 1.8 MAF in Critical year
        b. 1.8 MAF to 2.5 MAF in Dry year
        c. 2.5 MAF 3.2 MAF in Below Normal year

17. Decision Process Related to Shasta Operations through December 31, 2023, for All Water Year Types
    i. Reclamation, DWR, NMFS, FWS, SWRCB and CDFW will use a collaborative approach to real-time risk assessments through December 31, 2023, using technical teams for Shasta operations (Sacramento River Temperature Task Group, Upper

Sacramento Scheduling Team). Any modeling used for these decisions shall be publicly available, and the State Plaintiffs and Federal Defendants anticipate that SWRCB decisions will be similarly transparent.

ii. A Shasta Planning Group shall be established by the federal and state agencies comprised of the six agencies (i.e., NMFS, FWS, BOR, CDFW, DWR, SWRCB) that will work iteratively with the technical groups to solicit operational guidance and risk assessments and provide policy guidance as necessary. The Shasta Planning Group shall identify and attempt to resolve policy level issues associated with real time risk assessments.

    a. The Shasta Planning Group shall begin meeting in November consistent with Paragraph 13 above.

    b. The Shasta Planning Group will monitor projected hydrologic and operational conditions compared to actual conditions, which are available online.

    c. Reclamation will meet with the Shasta Planning Group to discuss the technical input being sought through the Sacramento River Temperature Task Group (SRTTG) or the Upper Sacramento Scheduling Team (USST). Reclamation will ensure the documented outcome of the technical input includes the options put forth to the SRTTG and USST for consideration. After technical input is received from the SRTTG or USST, the Shasta Planning Group will confer and seek to achieve consensus on project operations.

iii. If the Shasta Planning Group cannot reach consensus on an operational issue, the issue will be elevated to the Directors of the six agencies and the Directors will confer and seek to achieve consensus on Project operations. If a resolution is reached by the Directors, Reclamation shall operate consistent with the decision regarding Project operations from the Directors. If the Directors do not reach a resolution on operations, the Regional Administrator of NMFS will make an operational decision for protection of listed species after conferring with the Director of CDFW; provided however, for operations issues regarding temperature management and reservoir carryover goals that

are not resolved at the Directors' level and therefore elevate to NMFS, the Regional Administrator will make those operational decisions after also conferring with the Executive Director of the SWRCB. Reclamation will implement the operational decision.

18. The interim operations set forth above are specific to the hydrologic conditions through December 31, 2023, and may not be appropriate for the remainder of Water Year 2024 operations or long-term operations; and, shall expire on December 31, 2023. Accordingly, Federal Defendants and State Plaintiffs shall collaborate with each other as needed on development of interim operations for the remainder of Water Year 2024, and in doing so confer with public water agencies that contract for delivery of water from the CVP and the SWP and the *PCFFA* plaintiffs.

19. Nothing in this order shall be interpreted as precedential as to actions that Federal Defendants or State Plaintiffs may take in future consultations, including the reinitiated consultation and ITP review that Federal Defendants and State Plaintiffs are currently undertaking.

20. The Court retains jurisdiction to modify this Order as may be necessary and in the interests of justice and to decide disputes among the Parties to the above captioned cases ("Parties") regarding compliance with this Order notwithstanding the stay also ordered here. In the event such a dispute arises, the Parties will confer in good faith about the dispute. A Party may initiate proceedings in this Court to enforce the terms of Paragraphs 6 through 17 of this order no earlier than four calendar days after such meet-and-confer efforts begin, and the Parties agree to facilitate the prompt determination of any such dispute, including by agreeing to resolution of the dispute on shortened time. The first remedy shall be a motion to enforce the terms of this order. This order shall not, in the first instance, be enforceable through a proceeding for contempt of court.

21. On or before November 30, 2023, Federal Defendants and State Plaintiffs will file a joint status report describing whether continued interim coordinated operations are necessary, and if so, the status of discussions regarding a plan for interim coordinated operations to govern for the remainder of Water Year 2024, or some other interval of time.

22. On or before December 29, 2023, Federal Defendants and State Plaintiffs will file a joint status report: 1) describing the status of the reinitiated CVP and SWP consultation; 2) recommending a plan for interim CVP and SWP operations to govern for the remainder of Water Year 2024 or some other interval of time, if consultation remains ongoing; and 3) requesting a continued stay or other path forward in the litigation.

IT IS SO ORDERED.

Dated:   **February 28, 2023**

UNITED STATES DISTRICT JUDGE